**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
SOUTHERN DIVISION**

| | |
|---|---|
| Fort Des Moines Church of Christ, a nonprofit religious corporation, <br><br> Plaintiff, <br><br> v. <br><br> Angela Jackson, Patricia Lipski, Mathew Hosford, Tom Conley, Douglas Oelschlaeger Lily Lijun Hou, and Lawrence Cunningham, each in his or her official capacity as Commissioners of the Iowa Civil Rights Commission; Kristen H. Johnson, in her official capacity as the Executive Director of the Iowa Civil Rights Commission; Tom Miller, in his official capacity as the Attorney General of the state of Iowa; and the City of Des Moines, Iowa, <br><br> Defendants. | Case No. _____ <br><br> **Verified Complaint for Declaratory and Injunctive Relief** |

**INTRODUCTION**

1.      This is a civil rights action to stop the Commissioners and the Executive Director of the Iowa Civil Rights Commission, the Iowa Attorney General, and the City of Des Moines from compelling an Iowa church to communicate government messages to which it objects and from forcing the church to use its building in violation of its religious beliefs.

2.      The Iowa Civil Rights Commission ("Commission") interprets the Iowa Civil Rights Act ("Act"), Iowa Code § 216.1 *et seq*, and particularly Iowa Code § 216.7 pertaining to public accommodations, to force churches to allow individuals access to church restrooms, shower facilities, and changing rooms based on his or her gender identity, irrespective of biological sex.

Complaint for Declaratory and Injunctive Relief - 1

3.      In response to the question "does this law apply to churches?," the Commission states:

> ***Sometimes***. Iowa law provides that these protections do not apply to religious institutions with respect to any religion-based qualifications when such qualifications are related to bona fide religious purpose. ***Where qualifications are not related to a bona fide religious purpose, churches are still subject to the law's provisions. (e.g. a child care facility operated at a church or a church service open to the public)***. (emphasis supplied.)[1]

4.      The Commission's interpretation grossly misunderstands the religious purposes and beliefs of Plaintiff Fort Des Moines Church of Christ ("Church" or "Fort Des Moines").

5.      The City of Des Moines, in which Fort Des Moines Church of Christ is located, enacted a nearly identical provision to Iowa Code § 216.7, prohibiting discrimination by public accommodations. *See* Des Moines City Code Sec. 62-136 ("City Code").

6.      Fort Des Moines engages in religious expression and practice in every activity: during communal worship, other religious services, Sunday School classes, Bible studies, youth-oriented activities, annual vacation Bible schools, Easter activities, Christmas pageants, and other ministries, all of which are open to the public.

7.      The Church welcomes the public to its religious services, events, activities, and other religious programming because it believes that to be a faithful follower of Jesus Christ it must invite members of its community to hear the good news of God's love and forgiveness offered freely to everyone, it should teach those beliefs to the world, and it should extend kindness and compassion to all who pass through its church doors, just as Jesus Christ extended forgiveness, kindness, and compassion to its members.

---

[1] *Available at* https://icrc.iowa.gov/sites/default/files/publications/2012/SOGIPublicAccom.pdf (Last viewed July 2, 2016).

Complaint for Declaratory and Injunctive Relief - 2

8. Even activities the Church undertakes that do not contain overt religious inculcation are religious in nature because they engender other important elements of religious meaning, expression, and purpose, such as mutual encouragement, relationship-building, demonstrating the Church's interest in the welfare of others, and nurturing spiritual gifts to be used for the benefit of church members and the community. Events that further these religious objectives and are also open to the public include scrapbook meetings, weight loss group meetings, "pot luck" dinners, and family movie nights.

9. In all the Church's activities, it is communicating its understanding of God's truth, and refraining from communicating messages that violate the Church's understanding of God's truth.

10. As a result, there are messages, practices, and activities that the Church would not sponsor, host, or otherwise communicate because those messages, practices, and activities would violate the Church's understanding of God's truth.

11. The activities that the Church allows in its facility must be consistent with the Church's understanding of God's truth, and must not present a message that contradicts the Church's understanding of God's truth.

12. The Church believes and teaches that when God created humankind, He made each person as either male or female, and that the two complementary halves of humanity—biological males and biological females—together reflect the image and nature of God.

13. The Church believes and teaches that maleness or femaleness is designed by God and is tied to biology, chromosomes, physiology, and anatomy.

14. The Church's religious beliefs mandate that sex is an immutable trait from which springs the natural and healthy desires for physical privacy and modesty in states of partial or full undress, such as in restrooms, showers, and changing rooms.

15. The Church recognizes that some individuals do not identify with their biological sex, and the Church welcomes those individuals, wants to be a blessing to them, and wants to minister to them.

16. The Act and City Code prohibit the Church from issuing statements that might cause individuals to believe that they are unwelcome because of their perceived gender identity.

17. The language of the Act and the City Code are broad enough to include within that prohibition sermons, theological expositions, educational speeches, newsletters or church worship bulletin text, or other statements from the Church and its leaders.

18. The Act's and City Code's prohibitions would apply to a sermon that discussed the Church's understanding of human sexuality, as described above.

19. The Church's minister desires to preach sermons addressing God's design for human sexuality and the Church's beliefs about "gender identity," but reasonably fears that if it were to do so it would violate the Act's and the City Code's speech ban.

20. The Act's and the City Code's prohibitions would also apply to a church bulletin that included an explanation that the women's restrooms are reserved for biological females, while the men's restrooms are reserved for biological males.

21. The Act's and the Code's prohibitions thus cause Fort Des Moines to self-censor and chill its speech, while permitting other churches and entities to freely express beliefs regarding sex that are consistent with the Act and City Code.

Complaint for Declaratory and Injunctive Relief - 4

22.    This case is also about stopping the Commission, Attorney General, and the City of Des Moines (collectively, "Defendants") from forcing Fort Des Moines to use its facility in a way that violates its religious beliefs about human sexuality.

23.    In light of its religious beliefs, the Church has always maintained an unwritten policy that sex-specific private spaces—including restrooms and showers—may be used only by members of the designated biological sex.

24.    But in light of recent cultural developments, the Church's leadership team felt it necessary to put that policy into writing.

25.    The Church adopted written restroom and shower use policies limiting access to restrooms and showers based on one's biological sex, but reasonably fear that if it were to publicize its policies, it would violate the Act's and City Code's speech ban and subject itself to substantial penalties.

26.    The Act and the City Code require the Church, in connection with its worship and other religious services, as well as its various events and activities, to permit biological males who identify as females to enter its women's restrooms, showers, and changing areas, and vice versa.

27.    Allowing biological males to use facilities reserved for women and girls, and vice versa, violates the Church's religious beliefs about human sexuality.

28.    Requiring the Church to allow individuals to use the facilities reserved for the opposite biological sex contradicts the Church's message about God's intention and purpose for human sexuality.

29.    Requiring the Church to allow individuals to use the facilities reserved for the opposite sex forces the Church to speak a message that it does not want to speak; namely, that

sex is fluid, that it is based on subjective experience, and that God approves of biological males using restrooms and showers with females, and vice versa.

30.   Fort Des Moines reasonably fears that its desired conduct will violate the Act's and the City Code's speech ban and facility use mandate, subjecting it to damages, costs, legal fees, and other remedial action.

## JURISDICTION AND VENUE

31.   This action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and 42 U.S.C. §§ 1983 *et seq*.

32.   This court has jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1343.

33.   This Court has jurisdiction to award the requested declaratory relief under 28 U.S.C. §§ 2201-02 and Federal Rule of Civil Procedure 57.

34.   This Court has jurisdiction to award the requested injunctive relief under 28 U.S.C. § 1343 and Federal Rule of Civil Procedure 65.

35.   This Court has jurisdiction to award reasonable costs and attorneys' fees under 42 U.S.C. § 1988.

36.   Venue is proper in this district under 28 U.S.C. § 1391(b) because the Defendants reside in this district and/or the acts described in this Complaint occurred in this district.

## PLAINTIFF

37.   Plaintiff Fort Des Moines Church of Christ is a nonprofit corporation organized under Iowa law with its principal place of ministry at 244 E. Army Post Rd., Des Moines, IA.

## DEFENDANTS

38.   Defendants Angela Jackson, Patricia Lipski, Mathew Hosford, Tom Conley, Douglas Oelschlaeger, Lily Lijun Hou, and Lawrence Cunningham are Commissioners of the

Complaint for Declaratory and Injunctive Relief - 6

Iowa Civil Rights Commission; and Kristen H. Johnson is the Executive Director of the Iowa Civil Rights Commission. Defendants are sued in their official capacities only.

39. In their official capacities with the Iowa Human Rights Commission, Defendants are responsible for receiving, investigating, initiating, and enforcing complaints, alleging violations of the statute challenged in this case, and for interpreting the statute challenged in this case. *See* Iowa Code § 216.5 and § 216.15(1).

40. Defendant Tom Miller is the Attorney General of the State of Iowa and is sued in his official capacity only. Defendant Tom Miller has the power under state law to initiate complaints under the statute challenged in this case. *See* Iowa Code § 216.15(1).

41. Defendant City of Des Moines is a municipal corporation within the State of Iowa, which adopted ordinances that provide special nondiscrimination protections to certain classifications of individuals, including based on gender identity, and created the Des Moines Civil and Human Rights Commission to interpret and enforce such ordinances.

## STATEMENT OF FACTS

**Plaintiff Fort Des Moines Church of Christ**

42. Fort Des Moines Church of Christ belongs to the association of the Churches of Christ.

43. The Church's religious missions compels it to reach out to everyone to offer the good news of forgiving grace in Jesus Christ, demonstrate God's love, and be a blessing to its communities.

44. As part of the exercise of its religious beliefs, the Church offers religious ministries, worship services, and other events and activities to Church members and the general public.

45.    The Church publicizes its weekly worship services, religious ministries, and other events and activities on its public websites, newsletters, and by other means.

46.    The Church accomplishes its religious mission, in part, by welcoming all to participate in its regular worship services, Bible studies, youth activities, and other religious programming.

47.    Fort Des Moines welcomes the public to its religious ministries and worship services, and displays on its website the inclusive motto "Love God … Love People … Serve Everyone."

48.    The Church has three weekly services, all open to the public. On Sundays, it offers Sunday School to all ages, beginning at 9:00 A.M., and a worship service at 10:00 A.M. On Wednesdays, it opens its doors to all youth and children for services and activities.

49.    Consistent with the Church's mission to demonstrate God's love and compassion and to be a blessing to its community, Fort Des Moines opens its facility regularly to the public for weddings, funerals, and recreational and community activities, such as movie nights, concerts, child care for women's meetings, a food pantry for the hungry, "pot luck" dinners, and certain annual events such as an Easter egg hunt, pancake breakfast, summer vacation Bible school, and Christmas musicals and plays.

50.    Every event that occurs in the Church's facility is part of the exercise of the Church's religious beliefs and also an expression of its message about God and His plan for humanity.

51.    The Church does not allow use of its facility for any event or use that is not a part of the exercise of its religious beliefs and consistent with its belief about God and His plan for humanity.

52. The Church's facility is integral to its ministries. Each room in the facility serves a direct ministry purpose. Communal worship takes place in the sanctuary, religious instruction in the Sunday School room, Christian fellowship and youth group meetings in the fellowship hall, and spiritual counseling in the pastor's office.

53. Religious art adorns the walls throughout the Church's building, a large cross dominates the front of its sanctuary, and biblical references are prominent in the narthex and entry way.

54. The architectural design of the facility is distinctly a house of worship.

55. The Church has consecrated its building solely for its religious purposes. Its use of its building is inseparable from its religious teachings.

56. It would violate the Church's religious beliefs to allow its facilities to be used in ways that are inconsistent with or violate its religious beliefs.

57. Fort Des Moines' church facility consists of one building that contains a sanctuary that seats 170, Sunday School rooms, a fellowship hall, and administrative offices.

58. The Church building has two multi-occupancy restrooms: one for biological males and the other for biological females. Each multi-occupancy restroom contains a shower that is accessed through the restroom. The building also has two single-occupancy restrooms for each sex, and a restroom for toddlers and caregivers adjacent to the child care area.

**The Church's Restroom and Shower Policy**

59. The Church believes that sex is an immutable trait from which, among other things, spring the natural and healthy desire for physical privacy and modesty in conditions of partial or full undress, including in restrooms, showers, and other private spaces.

60.    The Church affirms the goodness of God's design in creating only two sexes, and believes that it is called to help every person embrace his or her distinct, but complementary, maleness and femaleness.

61.    The Church believes that one's biological sex was determined by God at conception.

62.    The Church believes that God intentionally and purposefully created males *male* and females *female*, and that these two complementary halves of humanity reflect God's image.

63.    The Church believes that "sex" is one's biological sex, which is determined by such things as biology, chromosomes, physiology, and anatomy.

64.    These biblically-based beliefs inform the Church's operations in everything from pulpit ministry, to discipleship, to marriage counseling, to the use of sex-specific restrooms, locker rooms, and changing facilities.

65.    Fort Des Moines believes that it would violate God's created order and commands to treat biological males as any other sex than male, and to treat biological females as any other sex than female.

66.    The Church believes that it would violate God's created order and commands to permit its sex-specific restrooms and showers to be used by members of the opposite biological sex.

67.    The Church has always maintained an unwritten policy that sex-specific private spaces—including restrooms and showers—may be used only by members of the designated biological sex.

68.     The Church's policies regarding access to its showers and restrooms flow logically and directly from its religious beliefs concerning God's design for biological sex and the desire to use its facilities in a manner consistent with its religious beliefs.

69.     To force Fort Des Moines to permit biological males to access female restrooms and showers or to allow biological females to access male restrooms and showers would violate and distort the Church's religious beliefs and teaching on the subject of sex.

70.     Until recently, Fort Des Moines did not consider it necessary to make public its restroom and shower policies because the Church believed it was free to establish its own facility standards. But in light of recent developments covered heavily by local and national media outlets, the Church came to realize that certain government agencies were trying to change how society views biological sex and "gender identity."

71.     For example, the Church learned of the federal government's lawsuit against the state of North Carolina for maintaining sex-specific facilities in schools and public facilities, and the Obama administration's letter to federally-funded schools and universities threatening to revoke taxpayer dollars unless the educational institutions allowed students to access private areas based on their gender identity, rather than their biological sex. The Church also became aware of the national retail chain, Target, announcing its new genderless restroom policy.

72.     The Church's leadership team adopted a written policy to clearly set forth the Church's religious beliefs and practices regarding biological sex and the use of its restrooms and showers.  The policy is attached as Exhibit A.

73.     Fort Des Moines wants to not only present a consistent public message regarding its beliefs about sexuality, but it also wants to clearly publish its policies to avoid any

embarrassing or awkward situations for those who do not identify with their biological sex and for its own church members.

74.     The Church also feels compelled because of its religious beliefs and because of recent cultural trends attacking its religious beliefs to publicize its policies and explain its religious beliefs about sex and gender.

75.     Fort Des Moines wants to publicize and distribute its restroom and shower policy on its church website, as an insert in its weekly Sunday morning bulletin, and via other means to church members, visitors, and anyone else using the church building.

76.     While the Church rejects the Commission's interpretation that it is subject to the Act and the City Code, Fort Des Moines has refrained from publicizing and distributing its policy on its website and through other public means, out of the reasonable fear that it would be subject to enforcement proceedings.

**The Act, the Commission, and the City Code**

77.     The Iowa Civil Rights Act prohibits a "public accommodation" from discriminating in two principal ways pertinent to this action: 1) refusing or denying any person because of gender identity accommodations, facilities, services, or privileges, including access to the restroom and shower room of his or her choice ("facility use mandate"), *see* Iowa Code § 216.7(1)(a), and 2) directly or indirectly advertising or in any other manner indicating or publicizing that the patronage of persons of any particular gender identity is unwelcome, objectionable, not acceptable, or not solicited ("speech ban"), *see* Iowa Code § 216.7(1)(b).

78.     Fort Des Moines Church of Christ is located within the city limits of Des Moines.

79.    The City Code prohibits public accommodations from discriminating because of gender identity using language nearly identical to Iowa Code § 216.7(1)(a) and (b). *See* Des Moines City Code §§ 62-136 (1) and (2).[2]

80.    Hereinafter, the City Code provision prohibiting public accommodations from denying persons access to restrooms and showers because of gender identity will be referred to, collectively with Iowa Code § 216.7(1)(a), as the "facility use mandate," and the prohibition against publishing statements that persons of any particular gender identity are unwelcome will be referred to, collectively with Iowa Code § 216.7(1)(b), as the "speech ban."

81.    The Act and City Code are to be construed broadly to effectuate their purposes. *See* Iowa Code § 216.18(1), Des Moines City Code § 62-14.

82.    The Act broadly defines "public accommodation," and subjects even private clubs, places, establishments, or facilities—such as churches—to the Act when they offer services, facilities, or goods to nonmembers for a "fee or charge or gratuitously." Iowa Code § 216.2(13)(a). The City Code similarly defines "public accommodation" broadly to include "any

---

[2] **Sec. 62-136 - Enumerated.**

It shall be an illegal discriminatory public accommodations practice for any person, owner, lessor, lessee, sublessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation to:

(1) Refuse or deny to any person because of race, religion, creed, color, sex, sexual orientation, gender identity, national origin, ancestry or disability the accommodations, advantages, facilities, goods, services, or privileges thereof or otherwise discriminate, separate, segregate or make a distinction against any person because of race, religion, creed, color, sex, sexual orientation, gender identity, national origin, ancestry or disability in the furnishing of such accommodations, advantages, facilities, goods, services or privileges.

(2) Directly or indirectly print or circulate or cause to be printed or circulated any advertisement, statement, publication or use any form of application for entrance and membership which expresses, directly or indirectly, any limitation, specification or discrimination as to race, religion, creed, color, sex, sexual orientation, gender identity, national origin, ancestry or disability or indicate or publicize that the patronage of persons of any particular race, religion, creed, color, sex, sexual orientation, gender identity, national origin, ancestry or disability is unwelcome, objectionable, not acceptable, or not solicited.

person," which is defined to include "associations" and "corporations," that offers its goods, services or facilities to the public. A public accommodation need not offer its goods or services for a charge or fee to be subject to the City Code. *See* Des Moines City Code § 62-1. Thus, a nonprofit corporation, such as a church, that offers its services to the public without charge may qualify as a public accommodation under the City Code.

83. Accordingly, all of the Church's services, events, activities, and all other religious programming are subject to the facility use mandate and the speech ban because they are offered to the public gratuitously, without a fee or charge.

84. The Act purports to exempt "[a]ny bona fide religious institution with respect to any qualifications the institution may impose based on religion, sexual orientation, or gender identity when such qualifications are related to the bona fide religious purpose." Iowa Code § 216.7(2)(a). The City Code is nearly identical, the only difference is the use of the indefinite article: "[a]ny bona fide religious institution with respect to any qualifications the institutions may impose based on religion, sexual orientation, or gender identity, when such qualifications are related to *a* bona fide religious purpose." (emphasis supplied.) Des Moines City Code § 62-137(1). Both provisions will be referred to collectively as the "religious institution exemption."

85. Neither the Act nor the City Code defines the unique phrase "qualifications are related to the bona fide religious purpose," or any other material term related to the religious institution exemption.

86. The Act empowers the Commission to interpret, administer, and enforce the Act and to seek damages, legal fees and costs, injunctive relief, and other remedial action. *See* Iowa Code § 216.5 and § 216.15. Similarly, the City Code empowers the Des Moines Civil and Human Rights Commission to administer and enforce the City Code and to seek damages or

admission of the complainant to a public accommodation. *See* Des Moines City Code § 62-42 and § 62-8.

87.    Where a material phrase such as "qualifications are related to the bona fide religious purpose" is undefined, the Commission's interpretation is given weight by Iowa courts.

88.    The Commission issued an interpretation of this phrase in its sexual orientation and gender identity public accommodations publication, entitled "A Public Accommodations Provider's Guide to Iowa Law" ("publication").[3]

89.    The publication begins in question and answer format and focuses on the right of individuals to access restrooms and showers "in accordance with their gender identity."

90.    The publication singles out one type of facility and asks: "Does this Law Apply to Churches?"  The publication answers the question as follows:

> ***Sometimes***. Iowa law provides that these protections do not apply to religious institutions with respect to any religion-based qualifications when such qualifications are related to a bona fide religious purpose. ***Where qualifications are not related to a bona fide religious purpose, churches are still subject to the law's provisions. (e.g. a child care facility operated at a church or a church service open to the public).***(emphasis supplied.)

91.    The Commission has interpreted the phrase "qualifications are related to the bona fide religious purpose" in § 216.7(2)(a) of the Act to mean that the Act's provisions against discrimination apply to church services and activities open to the public and child care services operated by a church.

92.    While the Des Moines Civil and Human Rights Commission has not issued an interpretation of the nearly identical City Code provision, it is reasonable to conclude the courts will give nearly identical phrases identical meanings.

---

[3] *Available at* https://icrc.iowa.gov/sites/default/files/publications/2012/SOGIPublicAccom.pdf (last viewed July 2, 2016).

93.    The facility use mandate requires public accommodations to, among other things, open locker rooms, showers, restrooms, changing areas, and other sensitive areas based on one's gender identity, rather than biological sex. *See* Iowa Code § 216.7(1)(a) and Des Moines City Code § 62-136(1).

94.    According to the Commission's publication, the facility use mandate requires that "transgender individuals must also be allowed to use a gender identity appropriate restroom without being … questioned."

95.    If an individual wanted to use the sex-specific facility of the opposite biological sex, the Church would inquire and question that individual.

96.    In addition to the facility use mandate, the speech ban prohibits covered entities from publishing statements which "directly or indirectly advertis[e] or in any other manner indicat[e]" that "persons of any particular … gender identity" are "unwelcome." Iowa Code § 216.7(1)(b) and Des Moines City Code § 62-136(2).

97.    As the Commission interprets it, the speech ban prohibits the Church from making any public statements, including of a religious character, that could be viewed as indicating that persons who do not identify with their biological sex are unwelcome at the Church's religious services, ministry activities, outreach events, and other religious programming to which the public are invited.

98.    The speech ban chills the Church's religious speech.

99.    Fort Des Moines self-censors its speech out of fear that it will be sanctioned if it expresses its religious beliefs regarding biological sex during its religious services, Bible studies, other religious programming, and various events and activities held in its buildings, or if it distributes its facility policy regarding shower and restroom use.

Complaint for Declaratory and Injunctive Relief - 16

100.    The speech ban forces the Church to either violate its deeply-held religious beliefs and self-censor its speech to avoid the Act's sanctions, or adhere to and freely express its religious beliefs and face sanctions.

101.    Any person claiming to be aggrieved under the Act or City Code may file a complaint with either the Iowa Civil Rights Commission or the Des Moines Human and Civil Rights Commission ("Commissions"). *See* Iowa Code § 216.15(1) and Des Moines City Code § 62-2.

102.    The Act and City Code empower the Commissions to investigate and hold hearings on any complaint, obtain injunctive relief against the public accommodation, require mandatory compliance reporting, and order damages, legal fees and costs, injunctive relief, and other remedial action.  *See* Iowa Code § 216.5 and § 216.15(1) and Des Moines City Code § 62-8 and § 62-42.

103.    The Act also empowers the Iowa Attorney General to enforce the Act by bringing a complaint. Iowa Code § 216.15(1).

104.    The Commission handled between 42 and 55 gender-identity-based complaints per year during fiscal years 2012-2015.

105.    The Commission enforced the facility mandate and speech ban against a faith-based organization, the YMCA, after it declined to permit a biological male who identified as female access to the women's shower and locker room facility.[4]

106.    The Commission has not disavowed enforcement of the facility use mandate and speech ban against churches, and in fact has affirmatively stated that the Act applies to churches.

---

[4] http://www.usatoday.com/story/news/nation/2013/10/27/transgender-rights-bathroom-battles/3282141/  (Last viewed July 2, 2016).

Complaint for Declaratory and Injunctive Relief - 17

107. By forcing the Church to self-censor its speech and violate its religious beliefs, the Church suffers and will continue to suffer irreparable harm to its constitutional liberties for which there is no adequate remedy at law.

108. The Church is left with no choice other than to file this action and seek declaratory and injunctive relief.

109. The Church challenges as unconstitutional the following provisions of the Act, Iowa Code § 216.2(13) and § 216.7, and of the Des Moines City Code, § 62-1, § 62-136, and § 62-137(1).

**FIRST CAUSE OF ACTION**
**Violation of the Free Speech Clause**
**of the First Amendment to the United States Constitution**

110. Plaintiff realleges all matters set forth in paragraphs 1-109 and incorporates them herein.

111. The Act and City Code on their face and as-applied are an unconstitutional abridgment of the Church's free speech because they: 1) are content-based speech restrictions; 2) are viewpoint-based restrictions on speech; 3) are overbroad; 4) are over-inclusive; 5) compel the Church to speak a message that violates its religious beliefs; and 6) forces the Church to engage in self-censorship.

112. Religious speech is fully protected by the First Amendment.

113. Fort Des Moines engages in religious speech in every aspect of its ministries and operations, including use of its facility.

114. The Church's religious beliefs are grounded in the biblical doctrine of God's creation of humankind in two distinct and immutable sexes, and that He has revealed His image in the complementariness of both sexes, and not in a single sex.

115. Further, the Church believes this doctrine must be taught from the pulpit during its Sunday worship services, during other religious services, and communicated through its public witness.

116. One way the Church gives concrete expression to its religious doctrine is through the manner in which it operates its facility.

**The Act and City Code are Content-Based**

117. The speech ban draws distinctions based on the idea or message a speaker conveys.

118. The Commissions must examine a statement's content to determine whether it is objectionable and so punishable under the Act and City Code.

119. The speech ban is a content-based speech restriction.

120. Content-based speech restrictions are presumptively unconstitutional and can survive only if they serve a compelling government interest that is advanced in the least restrictive means available.

121. The government has no compelling government interest that justifies punishing the Church's protected religious speech.

122. Any interest the government may have in punishing the Church's protected speech is not advanced in the least restrictive means available.

**The Act and City Code are Viewpoint-Based**

123. The Act and City Code permit churches and others to distribute and disseminate religious statements that support or condone policies permitting access to restrooms and showers based on one's gender identity, but punish religious statements that support or condone access to restrooms and showers based solely on one's biological sex.

124.   The Act's and the City Code's preference for certain religious statements that favor access to restrooms and showers based on gender identity, while punishing religious statements conditioning access on biological sex, violates the First Amendment's Free Speech Clause, which prohibits viewpoint discrimination.

125.   The Act and City Code may not punish protected speech on the basis of its viewpoint, absent a compelling governmental interest that is advanced in the least restrictive means available.

126.   The government has no compelling government interest to justify punishing the Church's protected religious speech based on its viewpoint.

127.   Any interest the government may have in punishing the Church's protected speech based on viewpoint is not advanced in the least restrictive means available.

**The Act and City Code Impose Over-Broad Restrictions on Speech**

128.   The Act and City Code are unconstitutionally overbroad on their face because they burden substantially more protected speech than could be justified by any compelling government interest.

129.   Government may not achieve its purposes by means which sweep unnecessarily broadly and thereby invade citizens' protected freedoms.

130.   The speech of churches regarding biological sex is protected religious speech. There is a realistic danger that the Commission's and City's speech ban applies to thousands of Iowa churches, not before this Court, that hold religious beliefs regarding sex that are similar to those of Fort Des Moines.

Complaint for Declaratory and Injunctive Relief - 20

131.     Because the speech ban applied to Iowa churches punishes a substantial amount of protected religious speech without constitutional justification, it is an unconstitutional regulation of speech and is facially void.

**The Act and City Code Impose Over-Inclusive Restrictions on Speech**

132.     The government bears the burden of showing that the speech ban does not substantially burden more speech than is necessary to achieve its stated purpose of deterring unwelcome statements by covered entities.

133.     The government cannot carry its burden because the speech ban is not narrowly tailored to achieve this purpose. The speech ban burdens significantly more speech than is necessary to further this purpose, including, but not limited to, the sermons, teaching, Bible studies, and other protected speech of Iowa houses of worship.

134.     The speech ban is facially invalid and the government cannot demonstrate a compelling interest and that the speech ban is advanced in the least restrictive means available.

**The Act and City Code Violate the Compelled Speech Doctrine**

135.     Through the threat of sanctions, the Act and City Code compel Fort Des Moines to communicate two distinct government messages: 1) that the Church's showers and restrooms must be opened to persons of the opposite biological sex, and 2) that sex is fluid and based on one's subjective experience.

136.     The Church objects to both messages. It believe that its house of worship should be operated in a manner consistent with its religious beliefs that God created two immutable and complementary sexes, and that maleness and femaleness are not fluid but based on biology and anatomy that God created with intention and purpose.

137.     Government-compelled speech is *per se* unconstitutional.

Complaint for Declaratory and Injunctive Relief - 21

138.    The government lacks a compelling interest to force the Church to communicate its favored messages, nor does the compulsion of speech serve any interest the government may possess in the least restrictive means available.

139.    The facility use mandate is invalid.

**The Act and City Code Result in Self-Censored Speech**.

140.    Fort Des Moines has refrained from declaring the Bible's teaching regarding God's design of two immutable and complementary sexes in sermons, theological expositions, educational speeches, newsletter or church worship bulletin text, and other public statements from the Church and its leaders.

141.    Additionally, the Church's leadership team adopted a restroom and shower use policy for distribution and dissemination to its members and to the public, but declined to distribute or disseminate it out of a reasonable fear that the Commission and the City would prosecute it for doing so.

142.    The Act's and the City Code's imposition of sanctions on public statements that may be viewed as unwelcome in violation of the speech ban, places a direct and substantial burden on the Church's right of Free Speech, including the Church's freedom to teach its religious beliefs regarding God's design for human sexuality and to publicly distribute and implement its restroom and shower use policy.

143.    Fort Des Moines is objectively, reasonably chilled from exercising its First Amendment right to free speech due to the risk of the Commissions' enforcement of the Iowa Civil Rights Act and Des Moines City Code and the substantial penalties available under both.

144.    The Church's free speech rights are violated by the Act and the Code, on its face, and as applied to the Church.

Complaint for Declaratory and Injunctive Relief - 22

**SECOND CAUSE OF ACTION**
**Violation of the Religion Clauses**
**of the First Amendment to the United States Constitution**

145.    Plaintiff realleges all matters set forth in paragraphs 1-109 and incorporates them herein.

146.    The Act and the City Code on their face and as-applied violate the Church's rights under the Religion Clauses of the First Amendment to the United States Constitution.

147.    The Free Exercise and the Establishment Clauses of the First Amendment together invest in churches the power to order their own affairs, including to decide for themselves, free from state interference, matters of church government, faith, doctrine, and operation of their own institutions.

148.    This freedom extends to the Church's use, direction, and control of its own house of worship.

149.    The Church's governing body determined that the use of church restrooms and showers must be consistent with its religious beliefs concerning sex and conditioned access to those areas of its facilities on biological sex, not on gender identity.

150.    The Commission's interpretation of the Act invests in it the power to decide which religious beliefs, practices, and doctrines of Fort Des Moines regarding sex are acceptable, and which ones are not.

151.    The Act and City Code directly and substantially interfere with the Church's First Amendment right to order its own internal affairs in matters involving church government, faith, doctrine, and the operation of its own institution and violates the First Amendment, and entangle the government in the internal affairs of the Church.

152.   The Act and City Code are not neutral or generally applicable because they contain categorical exemptions and allow the Commissions to make individualized assessments as to their application.

153.   For example, the religious institution exemption invests in the Commissions the power to determine if a qualification is "related to a bona fide religious purpose" of the Church. The term is undefined and permits the Commissions broad discretion to determine whether a church's asserted purpose is religious in nature and whether the religious purpose is sufficiently related to the qualification.

154.   The Act and City Code substantially burden the Church's exercise of its religious beliefs.

155.   Laws that are not neutral or generally applicable must be justified by a compelling governmental interest that is advanced in the least restrictive means available.

156.   The Act and City Code are subject to strict scrutiny because they implicate more constitutional rights than just the Free Exercise rights of the Church.

157.   The Act and City Code may not infringe on the Church's rights under the Religion Clauses of the First Amendment, absent a compelling governmental interest.

158.   The government has no compelling government interest that would justify infringing upon the Church's free exercise and antiestablishment rights by interfering with matters of internal governance.

159.   Any interest the government does possesses in infringing the Church's free exercise and antiestablishment rights is not advanced in the least restrictive means available.

160.   The Defendants have violated the Church's rights under the Free Exercise and Establishment Clauses.

**THIRD CAUSE OF ACTION**
**Violation of the Right to Expressive Association**
**of the First Amendment to the United States Constitution**

161.    Plaintiff realleges all matters set forth in paragraphs 1-109 and incorporates them herein.

162.    The Church engages in extensive expressive activity as a religious congregation; in fact, all of the Church's services and other religious programming involve group forms of religious expression.

163.    The Church believes it must regularly gather congregants and members of the public in communal prayer, worship, fellowship, discussion, mutual encouragement, and other religious speech and for other religious purposes.

164.    Fort Des Moines has a strong theological interest to engage in communal expression concerning its biblical understanding regarding human sexuality.

165.    The Church only uses its facility in ways that further its religious beliefs and communicates its religious message, and does not use its facility in ways that violate those beliefs.

166.    Forcing the Church to open its restrooms and showers to persons of the opposite sex would substantially burden the Church's right to associate for the purpose of expressing its religious beliefs regarding human sexuality.

167.    The government has no compelling interest—unrelated to the suppression of ideas—that is served by infringing the Church's expressive associational rights, nor can any such interest be achieved by the least restrictive means available.

168. Accordingly, the Church's First Amendment right to expressive association prohibits the government from imposing the facility use mandate and the speech ban on Fort Des Moines.

**FOURTH CAUSE OF ACTION**
**Violation of the Right to Peaceably Assemble**
**of the First Amendment to the United States Constitution**

169. Plaintiff realleges all matters set forth in paragraphs 1-109 and incorporates them herein.

170. The Act and City Code violate the Church's constitutional right to peaceably assemble as Fort Des Moines is subject to the speech ban and facility use mandate because it make its services and other religious programming open to the public, thus forcing the Church to either violate its deeply held religious beliefs and exclude nonmembers from its religious services and programming to avoid the application of the Act, or adhere to and freely express its religious beliefs to all who wish to attend its services and ministry activities and face substantial sanctions.

171. The Act and City Code violate the Church's right to assemble with like-minded or other interested individuals and the government has no compelling interest to interfere with such right.

172. Any interest the government has in interfering with the Church's First Amendment right is not advanced in the least restrictive means available.

173. The Defendants have violated the Church's right under the First Amendment to freely assemble.

**FIFTH CAUSE OF ACTION**
**Violation of the Due Process Clause**
**of the Fourteenth Amendment to the United States Constitution**

174.    Plaintiff realleges all matters set forth in paragraphs 1-109 and incorporates them herein.

175.    The Fourteenth Amendment to the United States Constitution guarantees Fort Des Moines the right to due process of law.

176.    The Fourteenth Amendment prohibits Defendants from censoring speech or penalizing behavior based on vague standards.

177.    Laws that interfere with First Amendment freedoms require a high level of specificity.

178.    The Commission's interpretation of the Act treats churches as a "public accommodation" and therefore subject to the Act whenever they offer services to nonmembers gratuitously, and purports to exempt churches only as to "qualifications the institution may impose based on religion, sexual orientation, and gender identity, when such qualifications are related to the bona fide religious purpose."

179.    Similarly, the City Code treats churches as public accommodations and therefore subject to the City Code because they offer services to the public, as there is no condition that the church must require a charge or fee to fall within the definition of a public accommodation, and purports to exempt churches only as "qualifications the institution may impose based on religion, sexual orientation, and gender identity, when such qualifications are related to a bona fide religious purpose."

180.    The Act and the City Code fail to define the vague term "qualifications that are related to the bona fide religious purpose." The Commission, which is charged with enforcing

the Act and whose interpretations are given weight by Iowa courts, interprets the Act to apply to Fort Des Moines whenever it opens its services and activities to the public or operates a day care, thereby subjecting the Church's actions to substantial penalties and chilling its speech. The Des Moines Civil and Human Rights Commission has not defined "qualifications that are related to the bona fide religious purpose."

181.    Additionally, the speech ban states that Fort Des Moines is prohibited from "directly or indirectly advertising or in any other manner indicating or publicizing that patronage of persons of any particular … gender identity … is unwelcome, objectionable, not acceptable or not solicited."

182.    The Act and the City Code fail to define the vague terms "indirectly advertise," "in any other manner indicat[e] or publiciz[e]," and "unwelcome, objectionable, not acceptable or not solicited."

183.    The surrounding statute offers no narrowing context for the phrases "indirectly advertise," "in any other manner indicat[e] or publiciz[e]," and "unwelcome, objectionable, not acceptable or not solicited."

184.    The terms "indirectly advertise," "in any other manner indicat[e] or publiciz[e]," and "unwelcome, objectionable, not acceptable or not solicited" have no settled legal meaning.

185.    As a result, neither Fort Des Moines nor anyone else can know what statements might qualify as "indirect[] advertis[ing]," or might "in any other manner indicat[e] or publicize" that someone is "unwelcome, objectionable, not acceptable or not solicited" because of his or her subjectively-perceived gender identity.

186.    The Church's leaders are left to guess what statements will violate the Act and City Code, and so may differ in their understanding as to what constitutes "qualifications that are

related to a bona fide religious purpose," what it means to "in any other manner indicat[e] or publisiz[e]," and what are "unwelcome, objectionable, not acceptable or not solicited" statements by a church during or in connection with its services and other religious programming.

187.    The Act and City Code provide no warning or notice as to what these terms mean and, therefore, what conduct and expression will and will not be penalized under the Act and the City Code.

188.    Nor do the Church and its leadership have any way of knowing or determining from the statute whether the language that they would like to include in the church worship bulletin—regarding who may use the women's restroom and who may use the men's restroom—will violate the Act or City Code.

189.    The speech ban is facially vague.

190.    Both the religious institution exemption and speech ban are also vague as applied to the Church.

191.    The Church's religious beliefs prevent it from allowing persons to access its restrooms or showers based on anything other than their biological sex.

192.    Fort Des Moines' leadership team adopted a written restroom and shower use policy consistent with its religious beliefs regarding sex, but refrained from making that policy public out of the reasonable fear of the speech ban.

193.    The Church fears that publishing the restroom and shower policy will subject it to enforcement proceedings and substantial penalties.

194.    In addition to the Commissions themselves, or the Attorney General, any person claiming to be aggrieved by the Church's actions can file a complaint with the Commissions.

195.    As a result, Fort Des Moines fears that, even if the Commissions or the Attorney General would not independently initiate an enforcement proceeding against the Church, someone attending one of its religious services, events, or activities may do so.

196.    In such a situation, even if the Commissions ultimately determined that the Church's sermon and bulletin text, or statements regarding human sexuality conveyed through other means had not violated the Act and City Code, the Church would still be forced to expend scarce ministry resources to defend itself.

197.    The Act's and City Code's speech ban is vague on its face, and both the speech ban and religious institution exemption are vague as applied to the Church, and as such constitute violations of the Due Process Clause of the Fourteenth Amendment

**PRAYER FOR RELIEF**

Plaintiff asks the Court to enter judgment against Defendants as follows:

1.    That this Court enter a temporary restraining order and a preliminary and permanent injunction restraining all Defendants, its officers, agents, employees, and all other persons acting in concert with them, from enforcing or applying Iowa Code § 216.7 (1) (a) and (b) of the Iowa Civil Rights Act, and Des Moines City Code, § 62-136(1) and (2) to prohibit or chill the Church's statements and facility use policy regarding its religious beliefs about sex;

2.    That this Court enter a declaratory judgment declaring that Iowa Code § 216.2(13) and § 216.7(1)(b) of the Iowa Civil Rights Act and the Des Moines City Code, § 62-1, § 62-136 and § 62-137(1) to church facilities violates the First and Fourteenth Amendments of the U.S. Constitution both facially and as-applied;

3.    That this Court issue the requested injunctive relief without a condition of bond or other security being required of Plaintiff;

4.      That this Court award Plaintiff's costs and expenses, including its attorneys' fees, pursuant to 42 U.S.C. § 1988; and

5.      For such other relief as the Court deems just and equitable.

## Verification

I, Michael Demastus, on behalf of Fort Des Moines Church of Christ, verify under penalty of perjury that I have read the above complaint and its contents. I also verify that, to the best of my knowledge and recollection, the matters stated in the complaint are true and correct.

Executed this 3rd day of July, 2016.

_____
Michael Demastus, Pastor

DATED:  This 4th day of July, 2016.

COUNSEL:

/s/ Timm Reid
Timm Reid
300 Walnut Street, Suite 5
Des Moines, IA 50309
Tel.: 800-217-9312
TReid@galliganlaw.com

Steven O'Ban*
Erik Stanley*
Jeremy Tedesco*
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
Tel.:  480-444-0020
Fax:  480-444-0028
soban@ADFlegal.org

Christiana Holcomb*
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
Tel.:  202-393-8690
Fax:  202-347-3622
cholcomb@ADFlegal.org
*Not licensed in DC*
*Practice limited to federal court*


*Pro hac vice application to follow*


Attorneys for Plaintiff