IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| FORT DES MOINES CHURCH OF CHRIST, ) | |
| a nonprofit religious corporation ) | Case No. 4:16-cv-00403-SMR-CFB |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ANGELA JACKSON, PATRICIA LIPSKI, ) | ORDER ON PLAINTIFF'S MOTION FOR |
| MATHEW HOSFORD, TOM CONLEY, ) | PRELIMINARY INJUNCTION, STATE |
| DOUGLAS OELSCHLAEGER, LILY LIJUN ) | DEFENDANTS' MOTION TO DISMISS, |
| HOU, AND LAWRENCE CUNNINGHAM, ) | AND CITY OF DES MOINES'S MOTION |
| each in his or her official ) | TO DISMISS |
| capacity as Commissioners of the ) | |
| Iowa Civil Rights Commission; ) | |
| KRISTIN H. JOHNSON,[1] in her official ) | |
| capacity as the Executive ) | |
| Director of the Iowa Civil Rights ) | |
| Commission; TOM MILLER, in his ) | |
| official capacity as the Attorney ) | |
| General of the state of Iowa; ) | |
| and the CITY OF DES MOINES, IOWA, ) | |

Defendants.

## I.  INTRODUCTION

The Fort Des Moines Church of Christ, Plaintiff, alleges state and municipal antidiscrimination laws unconstitutionally interfere with its First and Fourteenth Amendment rights.  Plaintiff would like to communicate messages that would place qualifications based on gender identity on who may use its restrooms and showers.  It would also like to explain its views supporting these qualifications through the delivery of a sermon drafted by one of its pastors.  To

_____

[1]Pursuant to the State's Motion to Dismiss, the Court has corrected the spelling of Ms. Johnson's name.  Future filings in this case shall contain the correct spelling of Defendant Kristin H. Johnson.

these ends, it moves for a preliminary injunction enjoining the enforcement of certain provisions of the Iowa Civil Rights Act ("ICRA") and the Des Moines City Code, both of which prohibit places of public accommodation from discriminating based on gender identity.  Both sets of laws contain exemptions for religious acts of religious institutions.  The members of the Iowa Civil Rights Commission ("ICRC") and the Attorney General (collectively "the State Defendants") and Defendant City of Des Moines ("the City") move to dismiss Plaintiff's Complaint.  The three motions came before the Court for a combined hearing on August 31, 2016.  The matters are fully briefed, submitted, and ready for consideration.

For reasons stated below, Plaintiff's request for a preliminary injunction is **DENIED**.  The Court also **DENIES** the motions to dismiss filed by the State Defendants and the City.

## II.  BACKGROUND

The following facts come from Plaintiff's Complaint, [ECF No. 1], and its Motion for Preliminary Injunction, [ECF No. 9].  In addition to Plaintiff's motion, there are two motions to dismiss pending before the Court, [ECF Nos. 23, 25].  In considering these motions, the Court accepts as true the well-pleaded allegations of the Complaint.  *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).  Facts and conclusions determined by a court in granting or denying a preliminary injunction are provisional and nonbinding.  *Henderson v. Bodine Aluminum, Inc.*, 70 F.3d 958, 962 (8th Cir. 1995); *Sak v. City of Aurelia, Iowa*, 832 F. Supp. 2d 1026, 1031 (N.D. Iowa 2011).

Plaintiff is a Des Moines church that offers religious ministries, worship services, and other events and activities to its members and the public at large.  [ECF No. 1 at 7].  Plaintiff holds three weekly services, all open to the public.  [ECF No. 1 at 8].  Additionally, Plaintiff regularly opens its facility to the public for weddings, funerals, recreational and community activities, such as child

care, a food pantry, and pot luck dinners.  *Id.*  Plaintiff states that even those activities that may not seem overtly religious are "religious in nature because they engender other important elements of religious meaning, expression, and purpose."  [ECF No. 1 at 3].  Plaintiff stresses it does not wish to allow the use of its facility in any manner that is inconsistent with its religious mission and doctrine.  [ECF No. 1 at 8].

Plaintiff's facility has two multi-occupancy restrooms, each designated for the exclusive use of either males or females.  [ECF No. 1 at 9].  Each restroom is equipped with a shower.  *Id.* The showers are located within the restrooms and they share an entrance.  *Id.* Additionally, the facility has two single-occupancy restrooms also designated for the separate use of each sex.  *Id.* Plaintiff views these designations as being limited to biological males or females.  [ECF No. 1 at 10].  According to its beliefs, "sex" is an individual's biological sex, determined at the time of birth by the individual's anatomy, physiology, and chromosomes.  *Id.*  Plaintiff has maintained an unwritten policy that areas designated for sex-specific use may only be used by members of the requisite biological sex—a policy that comports with its religious teachings.  *Id.*

In view of recent coverage of issues such as gender identity and restroom access, Plaintiff decided its policy should be clarified for its members and the public.  [ECF No. 1 at 11]. Plaintiff's leadership team adopted a written policy regarding the use of its facilities:

> In light of recent developments within and outside of the state, the church leadership determined that it is necessary to notify members and the public who attend the church's worship services, and other services, events and activities of the following policy:
>
>> The church's multiple occupancy bathrooms and the showers in the bathrooms are designated for single-sex use only. "Sex" is biological sex as determined by the physical condition of a person's chromosomes and anatomy as identified at birth, or by one's original birth certificate. This policy is consistent with and required by God's Word, which sets forth the distinctiveness, complementariness and immutability of the male sex and female sex as Jesus Christ himself

> taught in Matthew 19:4. God's Word also teaches that physical privacy and personal modesty spring from the physical conditions and unique characteristics of the sexes.

> This bathroom and shower policy will be made available to members and the public by placing it on the church website and as an insert to the weekly worship bulletin that is distributed to all attendees of the Sunday worship service. We will also post this notice outside of our bathrooms within the building.

[ECF No. 1-1].  Despite the above language regarding its intent to distribute the policy, Plaintiff has not publicized or distributed the policy due to its belief that such publication and distribution would subject it to enforcement proceedings before the ICRC or the Des Moines Civil and Human Rights Commission pursuant to state and municipal antidiscrimination laws.  [ECF No. 1 at 12].

Several Iowa statutes and Des Moines ordinances are the focus of this action.  In 2007, the Iowa legislature amended Iowa Code section 216.7(1)(a) of the ICRA to bar places of public accommodation from discriminating against individuals on the basis of sexual orientation or gender identity.  *See* 2007 Iowa Acts ch. 191, § 2.  Iowa Code section 216.7 provides:

> 1. It shall be an unfair or discriminatory practice for any owner, lessee, sublessee, proprietor, manager, or superintendent of any public accommodation or any agent or employee thereof:

> a. To refuse or deny to any person because of race, creed, color, sex, sexual orientation, gender identity, national origin, religion, or disability the accommodations, advantages, facilities, services, or privileges thereof, or otherwise to discriminate against any person because of race, creed, color, sex, sexual orientation, gender identity, national origin, religion, or disability in the furnishing of such accommodations, advantages, facilities, services, or privileges.

> b. To directly or indirectly advertise or in any other manner indicate or publicize that the patronage of persons of any particular race, creed, color, sex, sexual orientation, gender identity, national origin, religion, or disability is unwelcome, objectionable, not acceptable, or not solicited.

> 2. This section shall not apply to:

> a. Any bona fide religious institution with respect to any qualifications the institution may impose based on religion, sexual orientation, or gender identity when such qualifications are related to a bona fide religious purpose.

The ICRC released a brochure intended to serve as a guide to its interpretation of Iowa law with respect to civil rights issues concerning sexual orientation and gender identity.  [ECF No. 1 at 15].  The brochure was entitled *Sexual Orientation & Gender Identity: A Public Accommodations Provider's Guide to Iowa Law*.   Within the original brochure, the ICRC posed the question "Does This Law Apply to Churches?"  In response to that question, the ICRC posited the following:

> Sometimes. Iowa law provides that these protections do not apply to religious institutions with respect to any religion-based qualifications when such qualifications are related to a *bona fide religious purpose*.  Where qualifications are not related to a bona fide religious purpose, churches are still subject to the law's provisions. (e.g. a child care facility operated at a church or a church service open to the public).

[ECF Nos. 1 at 15; 27-2].  Not long after Plaintiff filed this action, the ICRC removed the original guide from its website and replaced it with a new one.  [ECF No. 9-1 at 21].  The current version contains the subsection "Places of Worship," which states:

> Places of worship (e.g. churches, synagogues, mosques, etc.) are generally exempt from the Iowa law's prohibition of discrimination, unless the place of worship engages in non-religious activities which are open to the public.  For example, the law may apply to an independent day care or polling place located on the premises of the place of worship.

*Id.*  Both versions of the brochure contained a disclaimer: "This guidance document is designed for general educational purposes only and is not intended, nor should it be construed as or relied upon, as legal advice."  *See* Iowa Civil Rights Commission, *Sexual Orientation & Gender Identity: A Public Accommodations Provider's Guide to Iowa Law*, https://icrc.iowa.gov/sites/default/files/publications/2016/2016.sogi_.pa1_.pdf   (last   visited October 14, 2016); [ECF No. 27-2].

The Des Moines City Code similarly forbids discrimination based on gender identity and other protected classes. Gender identity was added to the ordinance in 2011. Des Moines City Code section 62-136 provides:

> It shall be an illegal discriminatory public accommodations practice for any person, owner, lessor, lessee, sublessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation to:
>
> (1) Refuse or deny to any person because of race, religion, creed, color, sex, sexual orientation, gender identity, national origin, ancestry or disability the accommodations, advantages, facilities, goods, services, or privileges thereof or otherwise discriminate, separate, segregate or make a distinction against any person because of race, religion, creed, color, sex, sexual orientation, gender identity, national origin, ancestry or disability in the furnishing of such accommodations, advantages, facilities, goods, services or privileges.
>
> (2) Directly or indirectly print or circulate or cause to be printed or circulated any advertisement, statement, publication or use any form of application for entrance and membership which expresses, directly or indirectly, any limitation, specification or discrimination as to race, religion, creed, color, sex, sexual orientation, gender identity, national origin, ancestry or disability or indicate or publicize that the patronage of persons of any particular race, religion, creed, color, sex, sexual orientation, gender identity, national origin, ancestry or disability is unwelcome, objectionable, not acceptable, or not solicited.
>
> (3) Discriminate against any other person because such person has opposed any practice forbidden under this chapter or has filed a complaint, testified or assisted in any proceeding under this chapter.
>
> (4) Aid, incite, compel, coerce, or participate in the doing of any act declared to be a discriminatory accommodations practice under this section, or attempt, directly or indirectly, to commit any act declared by this section to be a discriminatory practice.

Additionally, Des Moines City Code section 62-137 states: "Nothing in this article shall be construed to apply to the following: (1) Any bona fide religious institution with respect to any qualifications the institutions may impose based on religion, sexual orientation, or gender identity, when such qualifications are related to a bona fide religious purpose."

Notwithstanding the language in each code section exempting religious institutions from their proscriptions, Plaintiff fears that it may qualify as a "public accommodation" through its gratuitous offer of services to the public at large.  [ECF No. 1 at 14].  Both codes define public accommodation.[2]

The ICRC and the Des Moines Civil and Human Rights Commission are each empowered under their respective codes to administer and enforce their prohibitions on discrimination by public accommodations.  *See* Iowa Code §§ 216.5, 216.15; Des Moines City Code §§ 62-42, 62-8. Additionally, any private citizen or government official may file a complaint under either the state

---

[2]Under Iowa Code section 216.2(13):

a.  "Public accommodation" means each and every place, establishment, or facility of whatever kind, nature, or class that caters or offers services, facilities, or goods for a fee or charge to nonmembers of any organization or association utilizing the place, establishment, or facility, provided that any place, establishment, or facility that caters or offers services, facilities, or goods to the nonmembers gratuitously shall be deemed a public accommodation if the accommodation receives governmental support or subsidy.  Public accommodation shall not mean any bona fide private club or other place, establishment, or facility which is by its nature distinctly private, except when such distinctly private place, establishment, or facility caters or offers services, facilities, or goods to the nonmembers for fee or charge or gratuitously, it shall be deemed a public accommodation during such period.

b.  "Public accommodation" includes each state and local government unit or tax-supported district of whatever kind, nature, or class that offers services, facilities, benefits, grants or goods to the public, gratuitously or otherwise. This paragraph shall not be construed by negative implication or otherwise to restrict any part or portion of the preexisting definition of the term "public accommodation."

Des Moines City Code section 62-1 provides, in part: "*Public accommodations* includes any person who caters or offers his or her goods, services, facilities, privileges, advantages, and accommodations to the public, (including but not limited to) state and local governmental units and tax-supported district of whatever kind. (See Iowa Code § 216.2(a)(12).).)"

or municipal discrimination ban. *See* Iowa Code § 216.15(1); Des Moines City Code § 62-2. Enforcement actions may include seeking damages, legal fees and costs, and equitable relief. *See* Iowa Code §§ 216.5, 216.15; Des Moines City Code §§ 62-8, 62-42.

On July 4, 2016, Plaintiff filed a Verified Complaint for Declaratory and Injunctive Relief against the Executive Director and Commissioners of the ICRC, the Iowa Attorney General, and the City of Des Moines. [ECF No. 1]. Plaintiff brings this action under 42 U.S.C. § 1983 and challenges both Iowa Code section 216.7 and Des Moines City Code section 62-136 as unconstitutional. Plaintiff alleges five causes of action. First, the antidiscrimination laws are unconstitutional both facially and as-applied under the Free Speech Clause of the First Amendment. Second, the challenged statutes and ordinances are unconstitutional facially and as-applied under the Religion Clauses of the First Amendment. Third, the statutes and ordinances violate Plaintiff's right to expressive association under the First Amendment. Fourth, the laws violate Plaintiff's right to peaceably assemble under the First Amendment. Fifth, provisions within the statutes and ordinances are vague and violate Plaintiff's right to Due Process under the Fourteenth Amendment.

In its Complaint, Plaintiff requests a temporary restraining order and preliminary and permanent injunctions restraining the Defendants from enforcing Iowa Code section 216.7(1) and Des Moines City Code section 62-136 to prevent Plaintiff from carrying out its restroom policy. Plaintiff also asks this Court to enter a declaratory judgment declaring that the application of Iowa Code sections 216.2(13) and 216.7(1)(b) and Des Moines City Code sections 62-1, 62-136, and 62-137(1) to church facilities violates the First and Fourteenth Amendments facially and as-applied.

On July 13, 2016, Plaintiff filed its Motion for Preliminary Injunction.  [ECF No. 9].  In support of its motion, Plaintiff argues it will likely succeed on its claims under the First Amendment's Free Speech and Religion Clauses and the Fourteenth Amendment's Due Process Clause.  Plaintiff attached to the motion a sermon one of its pastors had written entitled "A Biblical View of Human Sexuality."  The pastor provided statements in the motion declaring that he had drafted the sermon but had declined to deliver it due to his fear of exposing the church to liability for violating Iowa law.

Both the State Defendants and the City filed motions to dismiss.  [ECF Nos. 23, 25].  In their respective motions, both the City and the State Defendants argue the Court lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  They additionally allege other grounds for dismissal, as described below.

## III.  ANALYSIS

The Court addresses jurisdictional challenges before considering other issues.  *See Carlson v. Arrowhead Concrete Works, Inc.*, 445 F.3d 1046, 1050 (8th Cir. 2006) ("In every federal case the court must be satisfied that it has jurisdiction before it turns to the merits of other legal arguments."); *Charleston v. McCarthy*, ___ F. Supp. 3d ___, ___, 2016 WL 1370263, at *3 (S.D. Iowa Mar. 30, 2016) ("As a threshold matter, the Court must address [a party's] claim under Rule 12(b)(1) that this Court lacks subject matter jurisdiction.").  Thus, the Court will discuss the motions to dismiss filed by the State Defendants and the City prior to considering Plaintiff's motion for preliminary injunction.

### A.  *Defendants' Motions to Dismiss*

The State Defendants argue Plaintiff's Complaint should be dismissed on five separate grounds.  The State Defendants claim that 1) Plaintiff's action is barred for lack of subject matter

jurisdiction under Rule 12(b)(1); 2) the State Defendants are immune under the Eleventh Amendment; 3) Plaintiff failed to exhaust administrative remedies prior to bringing suit; 4) *Younger* abstention prevents adjudication of Plaintiff's suit; and 5) Plaintiff's Complaint fails to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  The City makes similar arguments for dismissal for lack of subject matter jurisdiction and failure to state a claim.  To the extent the motions' arguments overlap, the Court will consider them together.

## 1.  Subject Matter Jurisdiction

Both the State Defendants and the City assert in their motions to dismiss that Plaintiff does not have standing to bring its claims and, alternatively, that this case is not ripe for adjudication. If either is found to be true, this Court lacks jurisdiction of Plaintiff's case under Rule 12(b)(1).  In considering these Rule 12(b)(1) challenges, the Court's analysis contemplates all of the facts heretofore raised in this matter.  *See Osborn v. United States*, 918 F.2d 724, 728 (8th Cir. 1990) ("The district court has authority to consider matters outside the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1)."); *see also Land v. Dollar*, 330 U.S. 731, 735 & n.4 (1947); *Satz v. ITT Fin. Corp.*, 619 F.2d 738, 742 (8th Cir. 1980).

## a.  Standing

To confer jurisdiction upon this Court, Plaintiff's action must be a case or controversy within the meaning of Article III of the United States Constitution.  "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (alteration omitted) (citations omitted).  To meet the case-or-controversy requirement, a plaintiff must establish standing to sue by showing: "(1) he [or she] has 'suffered an injury-in-fact'; (2) the injury is 'fairly . . . trace[able] to the challenged action of the

defendant'; and (3) it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'"  *Balogh v. Lombardi*, 816 F.3d 536, 541 (8th Cir. 2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  As the party invoking federal jurisdiction, Plaintiff has the burden to establish these elements.  *See id.*  Specifically, Plaintiff "must establish standing for each type of remedy sought, including declaratory and injunctive relief."  *Dig. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957 (8th Cir. 2015).  Standing is not a "mere pleading requirement[ ] but rather an indispensable part of the plaintiff's case."  *Lujan*, 504 U.S. at 561.  Plaintiff must support each element "in the same way as any other matter on which [it] bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."  *Id.* (emphasis omitted).

### i. Injury in fact

Plaintiff alleges a pre-enforcement challenge to Iowa Code section 216.7 and its municipal counterpart.  That is, Plaintiff claims the antidiscrimination laws are chilling its freedom of speech; however, no enforcement actions are currently pending against it and no enforcement threats specific to Plaintiff have been made.  In support of its assertion that its rights to freely express its views have been chilled by the challenged provisions, Plaintiff offers its drafted restroom policy, which it fears to post and distribute with accompanying statements within its facility, and a sermon written by one of its pastors, who similarly says he fears to deliver it due to the possibility of exposing Plaintiff to liability.  By refraining to post these statements, Plaintiff alleges it has self-censored its speech.

Within standing jurisprudence, an injury in fact must be concrete and particularized or actual and imminent, rather than conjectural or hypothetical.  *Lujan*, 504 U.S. at 560.  The purpose of this requirement "is to ensure that the alleged injury is not too speculative for Article III

purposes—that the injury is '*certainly* impending.'"  *Id.* at 564 n.2 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).  "'Allegations of possible future injury' are not sufficient."  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1141 (2013) (alteration omitted) (quoting *Whitmore*, 495 U.S. at 158).

Self-censorship may amount to an injury in fact for purposes of standing if the plaintiff has been "objectively reasonably chilled from exercising his First Amendment right to free expression in order to avoid enforcement consequences."  *Republican Party of Minn. v. Klobuchar*, 381 F.3d 785, 792 (8th Cir. 2004); *see 281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011) ("Self-censorship can itself constitute injury in fact.").  "A plaintiff suffers from an objectively reasonable chilling of his First Amendment right to free expression by a criminal statute only if there exists a credible threat of prosecution under that statute if the plaintiff actually engages in the prohibited expression."[3]  *Klobuchar*, 381 F.3d at 792.  Such a threat may exist regardless of whether the power to initiate an enforcement action lies with state authorities or private parties. *See Balogh*, 816 F.3d at 542 (noting that either a credible threat of prosecution by state authorities or a credible threat that private parties may enforce a statute will satisfy the injury-in-fact requirement).

In order for the party to face "a credible threat of prosecution," the allegedly chilled course of conduct must be proscribed by the challenged statute.  *See Klobuchar*, 381 F.3d at 792–93 (dismissing for lack of standing a political party's facial overbreadth claim "because although the

---

[3]The Court notes that the statutes and ordinances at issue here do not provide for criminal penalties.  However, in injury-in-fact analysis, "a credible threat of prosecution" may stem from the possible enforcement of statutes allowing for state authorities and/or private parties to pursue civil causes of actions and damages or penalties.  *See Balogh*, 816 F.3d at 542; *Dig. Recognition Network*, 803 F.3d at 957.

Party has alleged an intention on behalf of itself and its members to engage in a course of conduct arguably affected with a constitutional interest, such course of conduct . . . is not proscribed by [the challenged statute]").  In First Amendment challenges, courts have found conduct that was "arguably proscribed" by a statute satisfies the injury-in-fact requirement.  *See Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003) (finding a credible threat of prosecution under a statute if the statute "arguably covers" the plaintiff's conduct since such a statute "may deter constitutionally protected expression because most people are frightened of violating criminal statutes").

Plaintiff alleges that it fears prosecution under the state and municipal discrimination bans if it posts and distributes its facilities policy or if its pastor delivers his drafted sermon about biological sex and the Bible.  However, of these two alleged injuries, one—the delivery of the sermon—is based on a fear that is not objectively reasonable.  All of the statutes, the ordinances, and the interpretations of the provisions appearing in the ICRC's guidance documents include an exemption for religious institutions when conducting religious activities.  *See* Iowa Code § 216.7; Des Moines City Code § 62-137.  Although the definitive scope of this exemption is yet to be determined, the Court concludes the delivery of a sermon by a pastor of a church is undoubtedly an act intended to serve "a bona fide religious purpose."  Indeed, it is a quintessential religious activity.  *See Fowler v. State of R.I.*, 345 U.S. 67, 70 (1953) (noting that it is not within "the competence of courts under our constitutional scheme to approve, disapprove, classify, regulate, or in any manner control sermons delivered at religious meetings," and "[s]ermons are as much a part of a religious service as prayers").  Hence, Plaintiff's allegedly chilled course of conduct is not even arguably proscribed by the statute.  Rather, it is expressly permitted.  Accordingly, Plaintiff's fear of enforcement consequences if it delivers the sermon is not objectively reasonable because it does not face a credible threat of prosecution on that basis.  *See Klobuchar*, 381 F.3d at

792–93; *Majors*, 317 F.3d at 721 (noting that a plaintiff cannot show a threat of prosecution under a statute "if it clearly fails to cover his conduct").

That still leaves Plaintiff's proposed restroom policy, which Plaintiff fears to publicize. Plaintiff believes the antidiscrimination laws could be enforced against it, but any such enforcement would be contingent on agency determinations.   Generally, courts should be "reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment."  *Clapper*, 133 S. Ct. at 1150; *see Whitmore*, 495 U.S. at 159–60 ("It is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case.").  If Plaintiff publicized and distributed its restroom policy and a complaint were filed, the interpreting agency would have to decide whether Plaintiff is a place of public accommodation.   Then, the agency would have to determine whether the religious institution exemption applied to bar any enforcement against Plaintiff.  The results of these determinations cannot, at this time, be predicted with any degree of certainty.

However, the scope of the religious institution exemption is essential to the merits of Plaintiff's case and should not be addressed as a matter of jurisdiction.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.,* the courts' statutory or constitutional *power* to adjudicate the case."); *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009) ("It is crucial, however, not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive."); *Free the Nipple-Springfield Residents Promoting Equal. v. City of Springfield*, 153 F. Supp. 3d 1037, 1042 (W.D. Mo. 2015) ("Standing is a jurisdictional inquiry and thus must be resolved before the merits are addressed.").

Instead, it is sufficient for purposes of standing that whether the statutes and ordinances proscribe Plaintiff's conduct is "arguable" and open to interpretation.  *See Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2344 (2014) (finding that "petitioners' intended speech [wa]s 'arguably proscribed' by the law); *281 Care Comm.*, 638 F.3d at 628 (noting that "plaintiffs ha[d] alleged that they wish to engage in conduct that could reasonably be interpreted" as violating the statute at issue and holding that this was sufficient to demonstrate standing).

Additionally, standing analysis under the First Amendment favors addressing a statute's alleged chilling effect on a plaintiff:

> The record before us indicates that plaintiffs have modified their speech in light of [a Minnesota statute condemning dissemination of false political material]. We conclude that, if the statute survives, it may well be objectively reasonable for plaintiffs to continue to do so.  Standing analysis under the First Amendment is intended to allow challenges based on this type of injury.

*281 Care Comm.*, 638 F.3d at 630–31; *see Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) ("The leniency of First Amendment standing manifests itself most commonly in the doctrine's first element: injury-in-fact."); *Arizona Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) ("[W]hen the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing." (quoting *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000))).

Plaintiff pled that it provides services to the public gratuitously, which under certain circumstances could make it a place of public accommodation.[4]  *See* Iowa Code § 216.2(13);

---

[4]Plaintiff did not state in its pleadings whether it receives government support or subsidy, which is a prerequisite to being a public accommodation based on an offer of gratuitous services to the public.  *See* Iowa Code § 216.2(13) ("[A]ny place, establishment, or facility that caters or offers services, facilities, or goods to the nonmembers gratuitously shall be deemed a public accommodation if the accommodation receives governmental support or subsidy.").  The Court *sua sponte* grants Plaintiff leave to amend its petition to include this fact by October 28, 2016.  If

Des Moines City Code § 62-1.  It intends to make statements that may lead members of a protected class to feel that their patronage is unwelcome or not acceptable—at the very least, not accepted in Plaintiff's restrooms or showers.[5]  *See* Iowa Code § 216.7(1)(b); Des Moines City Code § 62-136.  Plaintiff's proposed course of conduct is thus arguably proscribed by the statutes and ordinances at issue.  Consequently, Plaintiff's fear of prosecution, which led it to self-censor its speech, is objectively reasonable.  *See Klobuchar*, 381 F.3d at 792.  The Court concludes the chilling of Plaintiff's speech constitutes an injury in fact for the purposes of standing.

### ii.  Fairly traceable

The second requirement that Plaintiff must show is "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  *Lujan*, 504 U.S. at 560 (alteration in original) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).  "[W]hen a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision."  *Dig.*

---

Plaintiff fails to amend by October 28, 2016, the Court may dismiss Plaintiff's Verified Complaint, [ECF No. 1].

[5]Indeed, limiting access to bathrooms for people of particular identities has historically been one common way to express that people with such identities are not welcome, such as segregating bathrooms based on race or failing to provide bathrooms for women in courthouses. *See Okruhlik v. University of Arkansas ex rel. May*, 255 F.3d 615, 624, n.3 (8th Cir. 2001) (highlighting segregated bathrooms as one example of widespread discrimination found in a 1969 U.S. Commission on Civil Rights report to find that the application of Title VII to states is valid); Nedim Novakovic, *Access to Justice: Reducing the Implicit Pushback Burden on Working-Class Pro se Plaintiffs in Employment Law Cases*, 104 Calif. L. Rev. 544, 556–57 (2016) (analyzing how courtroom structures implicitly communicate marginalizing messages, and stating that the lack of bathrooms for women in courthouses was a product of "the explicitly sexist message . . . that the legal profession and the courtroom belonged only to men").

*Recognition Network, Inc.*, 803 F.3d 957–58 (quoting *Bronson v. Swensen*, 500 F.3d 1099, 1110 (10th Cir. 2007)).  The State Defendants argue their powers under the statute should be viewed as the ability to initiate a complaint, rather than enforce the complaint.  However, the power to initiate the complaint constitutes the ability to enforce the statute.  *See id.* at 958 (finding that state officials had no authority to enforce a statute because they could not "initiate enforcement or seek relief against a putative defendant").  The ICRC and the Iowa Attorney General plainly have the ability to enforce the ICRA.  *See Rent-A-Ctr., Inc. v. Iowa Civil Rights Comm'n*, 843 N.W.2d 727, 730–31 (Iowa 2014) ("The ICRC is entrusted by the legislature with interpreting, administering, and enforcing the Iowa Civil Rights Act . . . . [T]he attorney general may initiate a complaint [under the ICRA] . . . . The Iowa Attorney General's criminal justice bureau prosecutes the charges on behalf of the ICRC.").  The City's ordinances parallel those of the ICRA and its human rights commission similarly has the power to enforce them.  The fact that private parties may also initiate complaints under the antidiscrimination statutes is irrelevant.  Plaintiff satisfies the requirement that its injury is fairly traceable to challenged actions of the defendants.

### *iii.  Redressability*

Lastly, Plaintiff must show that its injury would be redressed by a favorable determination from this Court.  Plaintiff seeks a preliminary injunction against the City and State to prevent them from prosecuting it for civil rights violations.  The injunction would not prevent any other aggrieved party from seeking enforcement of the civil rights provisions against Plaintiff.  However, "a party 'satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself.  He need not show that a favorable decision will relieve his *every* injury.'"  *281 Care Comm.*, 638 F.3d at 631 (quoting *Minn. Citizens Concerned for Life v.*

*FEC*, 113 F.3d 129, 131 (8th Cir. 1997)).  Injunctive relief would redress a discrete injury to Plaintiff.  Thus, Plaintiff has standing to pursue its claims.

### b.  Ripeness

The State Defendants' and the City's next jurisdictional challenge alleges Plaintiff's case is not ripe for decision.   The purpose of the ripeness requirement is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Nat'l Right to Life Political Action Comm. v. Connor*, 323 F.3d 684, 692 (8th Cir. 2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967), *overruled on other grounds* by *Califano v. Sanders*, 430 U.S. 99, 97 (1977)).  In determining whether a case is ripe, the Court considers the "'fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'"  *Parrish v. Dayton*, 761 F.3d 873, 875 (8th Cir. 2014) (citation omitted).  Generally, "[t]he touchstone of a ripeness inquiry is whether the harm asserted has matured enough to warrant judicial intervention."  *Id.* (citation omitted).

Although ripeness and standing do not always go hand-in-hand, the inquiries are "inextricably linked."  *See Cooksey*, 721 F.3d at 240; *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138–39 (9th Cir. 1999) (en banc) ("[I]n many cases, ripeness coincides squarely with standing's injury in fact prong.").  As noted above in the Court's standing analysis, Plaintiff alleges harm or injury in form of its self-censorship.  *See Missourians for Fiscal Accountability v. Klahr*, ___ F.3d ___, ___, No. 15-2172, 2016 WL 4056057, at *5 (8th Cir. July 29, 2016) ("MFA asserts the harm of self-censorship . . . . MFA's case is ripe for review.").  The Eighth Circuit "encourage[s] a person aggrieved by laws he considers unconstitutional to seek a declaratory

-18-

judgment against the arm of the state entrusted with the state's enforcement power, all the while complying with the challenged law, rather than to deliberately break the law and take his chances in the ensuing suit or prosecution." *St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 488 (8th Cir. 2006).

Here, the primary question is whether the state and municipal antidiscrimination laws would apply to Plaintiff's proposed course of conduct.  This issue requires little "further factual development, is largely a legal question, and chills allegedly protected First Amendment expression." *See 281 Care Comm.*, 638 F.3d at 631.  Plaintiff's allegations of harm in this case are sufficient to establish a controversy ripe for adjudication.  Plaintiff's suit thus survives the State Defendants' and the City's Rule 12(b)(1) challenges.

## 2. Eleventh Amendment

The State Defendants next assert they have immunity under the Eleventh Amendment, which bars Plaintiff's suit.  "The Eleventh Amendment generally bars suits by private citizens against a state in federal court." *Balogh*, 816 F.3d at 544.  The exception to this general rule recognizes that "a private party can sue a state officer in his official capacity to enjoin a prospective action that would violate federal law." *281 Care Comm.*, 638 F.3d at 632–33; *see Ex Parte Young*, 209 U.S. 123, 167 (1908).  Plaintiff seeks prospective relief, thus dismissal on this ground depends upon whether Plaintiff has alleged that the State Defendants are "engaged in an ongoing violation of federal law." *See 281 Care Comm.*, 638 F.3d at 632.

For an officer of the state to be a proper defendant in an action seeking to enjoin the enforcement of a statute, the officer must have "some connection with the enforcement of the act." *Dig. Recognition Network*, 803 F.3d at 960 (quoting *Young*, 209 U.S. at 157).  This connection need not consist of the "primary authority to enforce the challenged law" nor encompass "the full

power to redress a plaintiff's injury." *281 Care Comm.*, 638 F.3d at 632–33.   All of the State

Defendants have power to initiate and prosecute complaints under Iowa Code section 216.7.   This

connection is sufficient to make the State Defendants amenable to suit under the *Young* exception

to Eleventh Amendment sovereign immunity.

### 3.  Exhaustion

The State Defendants also urge that Plaintiff should be required to exhaust administrative

remedies before filing suit in federal court.   Plaintiff is pursuing constitutional claims against the

State Defendants pursuant to 42 U.S.C. § 1983.   The general rule is that exhaustion is not required

prior to bringing suit for violations of § 1983.   *See Patsy v. Bd. of Regents of State of Fla.*, 457

U.S. 496, 516 (1982) ("[W]e conclude that exhaustion of state administrative remedies should not

be required as a prerequisite to bringing an action pursuant to § 1983.").   Plaintiff need not have

exhausted administrative remedies before filing its Complaint with this Court.

### 4.  *Younger* abstention

The State Defendants also submit that Plaintiff's action should be dismissed under the

doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971).   Under *Younger* and its progeny,

"[f]ederal court abstention is warranted when one of a few 'exceptional' types of parallel pending

state court proceedings exist: 'state criminal proceedings, civil enforcement proceedings, and civil

proceedings involving certain orders that are uniquely in furtherance of the state court's ability to

perform their judicial function.'" *Banks v. Slay*, 789 F.3d 919, 923 (8th Cir. 2015) (quoting *Sprint

Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013)).   There is no pending state proceeding in

this case.   *Younger* abstention does not apply.

### 5.  Failure to State a Claim

Alternatively, the State Defendants and the City move to dismiss Plaintiff's Complaint for failure to state a claim as required by Federal Rule of Civil Procedure 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Just as courts will not accept a plaintiff's conclusory statements of entitlement to relief, a court should not address threadbare arguments for dismissal unsupported by sufficiently reasoned analysis. *See Rotskoff v. Cooley*, 438 F.3d 852, 854 (8th Cir. 2006) ("[Appellant] waived his argument . . . because the issue was not developed in his briefs . . . . It is thus considered abandoned for failure 'to provide any reasons or arguments' for his contentions." (quoting *United States v. Zavala*, 427 F.3d 562, 564 n.1 (8th Cir. 2005))); *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . Judges are not like pigs, hunting for truffles buried in briefs.").

Neither the State Defendants nor the City provided a developed, non-conclusory argument under Rule 12(b)(6) discussing whether Plaintiff had pled sufficient factual matter that would support its five causes of action.  The State Defendants' Rule 12(b)(6) argument refers to its Motion to Dismiss and its Resistance to Plaintiff's Motion for Preliminary Injunction in their entirety as support for the contention that dismissal under the rule is proper.  [*See* ECF No. 23 at 13].  However, those documents were not drafted to address the requirements of Rule 12(b)(6). The State Defendants declined to specifically address whether the allegations in Plaintiff's Complaint support its causes of action.  At the hearing before the Court, the State Defendants merely stated that Plaintiff's claims are not "plausible." In its motion, the City similarly does not direct its attention to the Complaint's allegations but instead simply states that since Plaintiff's legal status as a public accommodation is in question, Plaintiff has failed to state a claim.  This is likewise not an appropriate analysis of whether Plaintiff has stated claims that are plausible on its face.  The Court therefore cannot find support for dismissal of Plaintiff's suit based on these arguments.

## B.  *Plaintiff's Motion for Preliminary Injunction*

The Court turns now to consideration of Plaintiff's motion for preliminary injunction. [ECF No. 9].  Federal Rule of Civil Procedure 65 gives courts the authority to grant preliminary injunctions.  "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quoting *Munaf v. Geren*, 553 U.S. 674, 689–690 (2008)).

> In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."

*Id.* (citation omitted) (first quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987); then quoting *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982)).

In determining whether to grant a party's request for preliminary injunction, the Court evaluates four factors: "(1) a likelihood of success on the merits; (2) irreparable harm; (3) that the balance of the harms of granting or denying the injunction are in its favor; and (4) that granting the injunction is in the public's interest." *Child Evangelism Fellowship of Minnesota v. Minneapolis Special Sch. Dist. No. 1*, 690 F.3d 996, 1000 (8th Cir. 2012); *see Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). "'The decision to grant or deny a preliminary injunction rests within the discretion of the district court and will not be disturbed on appeal absent a showing of abuse of discretion.'" *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015) (quoting *United States v. Gannaway*, 536 F.2d 784, 786 (8th Cir. 1976)).

### 1.  Likelihood of success on the merits

There are two standards for determining whether a party seeking a preliminary injunction has established the requisite likelihood of success on the merits. Ordinarily, to obtain a preliminary injunction, a movant must only demonstrate a "fair chance of prevailing." *1-800-411-Pain Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1054 (8th Cir. 2014). The Eighth Circuit determined in *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds* that parties who move to enjoin the enforcement of state statutes or regulations must establish that they are "likely to prevail on the merits" because policies announced through such provisions are the result of "presumptively reasoned democratic processes." 530 F.3d 724, 731–32 (8th Cir. 2008) (en banc). The purpose

of this "elevated standard" is "'to ensure that preliminary injunctions that thwart a state's presumptively reasonable democratic processes are pronounced only after an appropriately deferential analysis.'"  *1-800-411-Pain Referral Serv., LLC*, 744 F.3d at 1054 (emphasis omitted) (quoting *Rounds*, 530 F.3d at 733).  Although there is no action currently pending against Plaintiff, the injunction Plaintiff requests would restrain the State Defendants from taking enforcement actions pursuant to the discrimination ban embodied in the ICRA.  Plaintiff thus intends to enjoin "government action based on presumptively reasoned democratic processes."  *See Rounds*, 530 F.3d at 732.

With regard to Plaintiff's effort to restrain the enforcement of the City ordinances, examination of the circumstances surrounding the ordinances reveals that the test is similarly whether an enforcement effort under that provision would involve "the full play of the democratic process."  *See Rounds*, 530 F.3d at 732 n.6; *Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995).  The Des Moines City Code provisions Plaintiff challenges are nearly identical in wording and purpose to the State statutes at issue.  They are intended to allow for similar enforcement of the same discrimination ban codified in the ICRA at the municipal level.  Under the reasoning of *Rounds*, the Court determines that the policy underlying the City ordinances at issue is one "where the full play of the democratic process involving both the legislative and executive branches has produced a policy in the name of the public interest embodied in a statute and implementing regulations."  *Able*, 44 F.3d at 131; s*ee Rounds*, 530 F.3d at 732 n.6.

Accordingly, the Court must make "a threshold finding" that Plaintiff is likely to prevail on the merits of its motion with regard to both the State statutes and City ordinances before proceeding to consider the other factors.  *See Rounds*, 530 F.3d at 733.  Plaintiff argued in its motion it would likely succeed in showing that the laws it challenges are void under the Free

Speech Clause and the Free Exercise Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment.  The Court considers each of these claims below.

a.   Free Speech and Due Process claims

Plaintiff alleges both facial and as-applied challenges to the constitutionality of state and municipal antidiscrimination laws under the Free Speech Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment.

i.   *Facial Claims: Overbreadth and Vagueness*

The Court begins by addressing Plaintiff's claims that the antidiscrimination laws at issue are facially invalid.  At the outset, the Court notes that facial challenges are not encouraged.  *See Phelps–Roper v. City of Manchester, Mo.*, 697 F.3d 678, 685 (8th Cir. 2012) ("Facial challenges are disfavored because they often rest on speculation . . . [and] raise the risk of premature interpretation of statutes on the basis of factually barebones records."  (alteration in original) (citation and internal quotation marks omitted)).  Still, there are two doctrines available to a plaintiff attempting to invalidate a statute on its face:

> First, the overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when "judged in relation to the statute's plainly legitimate sweep." Second, even if an enactment does not reach a substantial amount of constitutionally protected conduct, it may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests.

*City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612–615 (1973)).

As Plaintiff points out, there are two parts to the antidiscrimination laws: an initial subpart prohibiting discriminatory practices and a second subpart prohibiting discriminatory publications. *See* Iowa Code § 216.7(1)(a) & (b); Des Moines City Code § 62-136.  The discriminatory practice

prohibition in Iowa Code section 216.7(1)(a) is likely to be upheld under both overbreadth and vagueness jurisprudence. Similar laws prohibiting discrimination in public accommodations are on the books of many other states. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 624 (1984) (discussing the adoption of public accommodation laws by states before and after the adoption and overruling of the federal Civil Rights Act of 1875). When these laws have been challenged, courts have repeatedly upheld them. According to the United States Supreme Court:

> Provisions like these are well within the State's usual power to enact when a legislature has reason to believe that a given group is the target of discrimination, and *they do not, as a general matter, violate the First or Fourteenth Amendments*. Nor is [Massachusetts's public accommodations statute] unusual in any obvious way, since it does not, on its face, target speech or discriminate on the basis of its content, the focal point of its prohibition being rather on the act of discriminating against individuals in the provision of publicly available goods, privileges, and services on the proscribed grounds.

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 572 (1995) (emphasis added) (citation omitted); *see also New York State Club Ass'n., Inc. v. City of New York*, 487 U.S. 1, 11–16, (1988); *Roberts*, 468 U.S. at 624–626; *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 258–262 (1964). Thus, Plaintiff's facial attack on the discriminatory practice prohibition within Iowa Code section 216.7(1)(a) and Des Moines City Code section 62-136(1) will likely not succeed.

The laws' prohibitions on discriminatory publications must be examined independently. *See Minnesota Majority v. Mansky*, 708 F.3d 1051, 1057 (8th Cir. 2013) (considering a First Amendment facial attack on a statute and analyzing each challenged provision separately). In a First Amendment case, "a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008)). Additionally, "application of the doctrine is

-26-

'strong medicine' that should be employed 'sparingly and only as a last resort.'"  *Neely v. McDaniel*, 677 F.3d 346, 350 (8th Cir. 2012) (quoting *Broadrick*, 413 U.S. at 613).

"The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Williams*, 553 U.S. 285, 293 (2008).  The discriminatory publication prohibition in Iowa Code section 216.7(1)(b) states that "it shall be an unfair or discriminatory practice" for places of public accommodation "[t]o directly or indirectly advertise or in any other manner indicate or publicize that the patronage of persons of any particular race, creed, color, sex, sexual orientation, gender identity, national origin, religion, or disability is unwelcome, objectionable, not acceptable, or not solicited."  Iowa Code § 216.7(1)(b); *see* Des Moines City Code § 62-136.[6]

In construing the provisions at issue, the Court analyzes each operative feature of the statute separately.  *See Williams*, 553 U.S. at 293.  Given the meaning of each operative part of the statute as analyzed below, the language of the discriminatory publications prohibition suggests the legislature sought to prevent places offering goods and services to the general public from communicating publicly—likely through advertisements or similar postings—that their goods and services were not intended to be available to members of protected classes.

First in this analysis is the term "public accommodation," which is defined within the laws in question.  To put Iowa Code section 216.2(13) in the simplest possible terms, entities that offer

---

[6]The language of Iowa Code section 216.7(1)(b) and Des Moines City Code section 62-136, though very similar, is not entirely identical.  Plaintiff challenges the discriminatory publication prohibition in both laws as unconstitutional, although its analysis more directly addresses Iowa Code section 216.7(1).  A similar and overlapping analysis would apply to Des Moines City Code section 62-136.  Because, as noted below, Plaintiff did not provide examples of the overbreadth of either code section, the Court is unable to conclude that either Iowa Code section 216.7(1)(b) or Des Moines City Code section 62-136(2) is unconstitutionally overbroad at this time.

goods or services to non-members and the public, either gratuitously or for a fee, are places of public accommodation. This definition is fairly broad and includes most commercial and non-commercial enterprises; it excludes private clubs and membership organizations that do not allow non-members to partake of their services. This distinction comports with previous interpretations of the term. *See, e.g.*, *U.S. Jaycees v. Cedar Rapids Jaycees*, 614 F. Supp. 515, 517 (N.D. Iowa 1985), *aff'd*, 794 F.2d 379 (8th Cir. 1986) (finding membership organization was a public accommodation because it offered services to the general public and "[a]ny individual, business concern, association or group is eligible for membership").

Next, the terms "advertise," "indicate," and "publicize" are clearly aimed at public accommodations' communication of messages to the public. "Advertise" has an undoubtedly commercial connotation, whereas "indicate" and "publicize" do not. *See Williams*, 553 U.S. at 294 ("Advertising, distributing, and soliciting are steps taken in the course of an actual or proposed transfer of a product, typically but not exclusively in a commercial market."). "Publicize" can easily be given an objective meaning—making speech public. "In any other manner indicate" appears broad, but the application of "the commonsense canon of *noscitur a sociis*—which counsels that a word is given more precise content by the neighboring words with which it is associated"—narrows the possible meanings of the phrase. *See Williams*, 553 U.S. at 293; 2A N. Singer & J. Singer, Sutherland Statutes and Statutory Construction § 47:16 (7th ed. 2007). There are many possible ways of communicating speech and the term "in any other manner indicate" seems aimed at encompassing those methods that may not comfortably fit within the definitions of "advertise" or "publicize"—for instance, verbal communications that accomplish the same end as a written advertisement or publication, publicly communicating a message of discrimination.

Third, the term "patronage" narrows the reach of the prohibition to speech that communicates messages regarding the patronage of members of protected classes at places of public accommodation. "Patronage" generally refers to consumers or customers, i.e. those who consume and/or purchase goods and services.  *See* Patronage, *Black's Law Dictionary* (10th ed. 2014) (defining "patronage" as "[a]ll the customers of a business; clientele").  The patronage here is more specifically "the patronage of persons of" any of the protected classes enumerated within the statute.

Finally, the string of qualifiers—"unwelcome, objectionable, not acceptable, or not solicited"—describes the type of messages that fall within the statute.   Each term has its own meaning, although the definitions overlap to a certain extent.  "Unwelcome" means "not welcome" or "DISTASTEFUL, UNWANTED."  *Webster's Third New International Dictionary* 2515 (2002).  "Objectionable" means "arousing objection : OFFENSIVE."  *Id.* at 1555.  "Not acceptable" means not "capable or worthy of being accepted," and "accepted" is defined as "generally approved."  *Id.* at 11.  The definition of "not solicited" depends on the meaning of "solicit," which has several meanings.  Considering the term within the statute as a whole—especially its several references to commerce and its trappings, i.e. goods, services, advertising—suggests that the intended meaning was "to approach with a request or plea (as in selling or begging)."  *Id.* at 2169.  As referenced above, "solicited" often appears in connection with offers of goods or services.  *See Williams*, 553 U.S. at 294.  The qualifiers, then, describe messages of limited access to the goods and services of a public accommodation because of a patron's protected status.

Again, according to the Court's statutory construction analysis, the legislature sought to prevent places offering goods and services to the general public from communicating publicly—

likely through advertisements or similar postings—that their goods and services were not intended to be available to members of protected classes.

After construing the statute, the Court must determine whether it "criminalizes a substantial amount of protected expressive activity." *See id.* at 297. This necessitates comparing the likely number of unconstitutional applications of the statute with the plainly legitimate applications. *Stevens*, 559 U.S. at 473. The plainly legitimate sweep of the discriminatory publication prohibition is likely broad. As construed, the statute is clearly intended to place limitations on the messages that may be publicly communicated with reference to the goods and services offered by a given establishment—specifically, restraining establishments from placing limits based on membership in a protected class on who may use or purchase their goods and services. Many of these messages would be considered commercial speech, considering that goods, services, and messages relating to them are often the subject matter of commercial speech. Commercial speech is subject to intermediate scrutiny. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980). And, the United States Supreme Court and the Iowa Supreme Court have both rejected discriminatory messages in advertising. *See Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 388 (1973) (finding that municipal human rights ordinance that prohibited newspaper from classifying employment advertisements on the basis of sex did not violate the First Amendment); *Baker v. City of Iowa City*, 867 N.W.2d 44, 57 (Iowa 2015) *cert. denied sub nom. Baker v. City of Iowa City, Iowa*, 136 S. Ct. 487 (2015) (upholding the discriminatory publication prohibition in Iowa Code § 216.6, which places similar antidiscrimination limits on employers, under commercial speech test).

In support of its contention that the discriminatory publications prohibition condemns a substantial amount of protected activity, Plaintiff first discusses the reach of the statute as-applied

to itself.  That application of the provision is properly the subject of Plaintiff's as-applied Free Speech challenge and will be discussed below.  Plaintiff also offers cases in which other policies or regulations containing some of the same words as the provision here were invalidated.  *See Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 216 (3d Cir. 2001) (finding that school anti-harassment policy was overbroad); *Armstrong v. D.C. Pub. Library*, 154 F. Supp. 2d 67, 79 (D.D.C. 2001) (holding that library regulation prohibiting the entry of persons exhibiting an "objectionable appearance" was overbroad).

However, Plaintiff fails to identify unconstitutionally broad applications of the instant provisions, let alone demonstrate that a substantial number of such applications exist.  This undermines Plaintiff's overbreadth claim.  *See Wash. State Grange*, 552 U.S. at 450 ("We generally do not apply the 'strong medicine' of overbreadth analysis where the parties fail to describe the instances of arguable overbreadth of the contested law."); *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988) (stating that, as part of a successful overbreadth challenge, an "appellant must demonstrate from the text of [the challenged law] and from actual fact that a substantial number of instances exist in which the [l]aw cannot be applied constitutionally").  At this juncture, the Court concludes Plaintiff has failed to show that the discriminatory publications prohibitions within the state and municipal antidiscrimination laws are overbroad.

The discriminatory publications prohibitions are also not likely to be found void for vagueness.  "The void-for-vagueness doctrine is embodied in the due process clauses of the [F]ifth and [F]ourteenth [A]mendments."  *Woodis v. Westark Cmty. Coll.*, 160 F.3d 435, 438 (8th Cir. 1998) (quoting *D.C. & M.S. v. City of St. Louis, Mo.*, 795 F.2d 652, 653 (8th Cir. 1986)).  A law is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of

what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Williams*, 553 U.S. at 304; *see United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32–33 (1963) ("Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed."). Typically, "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Williams*, 553 U.S. at 306. The Supreme Court has found such indeterminacy in "statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent'—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Id.*

Plaintiff challenges several of the words and phrases in Iowa Code section 216.7 and Des Moines City Code sections 62-136 and 62-137 as vague. First, Plaintiff charges that "bona fide religious institution" and "bona fide religious purpose" are impermissibly vague. The Court does not believe that religious institution or religious purpose is so subjective that a reasonable person would realistically be unable to determine their meanings. Instead, the Court will determine whether "bona fide" when placed alongside these terms renders them overly vague. The dictionary entry for "bona fide" provides several definitions: "1 : made in good faith without fraud or deceit"; "2 SINCERE" ":made with earnest or wholehearted intent"; and, "3 : not specious or counterfeit : GENUINE." *Webster's Third New International Dictionary* 250 (2002). Additionally, the term is frequently used in the law. *Griffin v. Lockhart*, 935 F.2d 926, 929 n.2 (8th Cir. 1991). "In each application it is generally used according to its dictionary definition-that is, meaning '[a]cting or done in good faith; sincere, genuine.'" *Id.* (alteration in original) (quoting *Oxford English Dictionary* (2d ed. 1989)). "Bona fide" adequately conveys the legislature's intent to limit the

religious institution exemption to those organizations who are genuine in their religious beliefs or those who request the protection of the religious institution exemption in good faith. Hence, the terms "bona fide religious institution" and "bona fide religious purpose" are not so subjective as to lead to seriously discriminatory enforcement.

Furthermore, when making enforcement decisions, state or municipal authorities are bounded by the longstanding rule that government officials may not make judgments regarding the truth or veracity of religious beliefs but may only inquire as to whether such beliefs are sincerely held. *Remmers v. Brewer*, 361 F. Supp. 537, 542 (S.D. Iowa 1973), *aff'd*, 494 F.2d 1277 (8th Cir. 1974) ("The only appropriate and relevant inquiry is whether or not the Church of the New Song is a religion and whether the plaintiffs possess a sincere and good faith belief in that creed."); *see United States v. Ballard*, 322 U.S. 78, 86 (1944) ("Men may believe what they cannot prove. They may not be put to the proof of their religious doctrines or beliefs."). Indeed, that is similar to how the Fifth Circuit recently interpreted the term "bona fide religious beliefs." *See Davis v. Fort Bend Cty.*, 765 F.3d 480, 485 (5th Cir. 2014) ("Bona fide religious beliefs include 'moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.'" (quoting 29 C.F.R. § 1605.1)).

Second, Plaintiff also challenges the descriptors "unwelcome, objectionable, not acceptable, or not solicited" within Iowa Code section 216.7(1)(b) and Des Moines City Code section 62-136 as subjective. The Court gives these words the same meanings ascribed to them above. Initially, each of these terms does seem to leave room for a certain amount of subjectivity. However, considering them together within the context of the laws in question—laws aimed at preventing discrimination—the provisions are not so standardless as to lead to seriously discriminatory enforcement. Though not perfect, the terms sufficiently describe messages of

limited access to a public accommodation's goods or services based on membership in a protected class.   Factfinders are capable of making judgments regarding what a defendant's conduct signifies.   Courts and juries "pass every day upon the reasonable import of a defendant's statements—whether, for example, they fairly convey a false representation or a threat of physical injury."   *Williams*, 553 U.S. at 306–07 (citation omitted).   Language is an imperfect medium.   *See Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) ("Condemned to the use of words, we can never expect mathematical certainty from our language.").   Hence, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989) (rejecting facial challenge to statute even though standards were "undoubtedly flexible, and the officials implementing them w[ould] exercise considerable discretion").

Lastly, Plaintiff challenges the words "in any other manner indicate," which appear in Iowa Code section 216.7(1)(b), as vague.   As noted above, within the context of the provisions, this phrase was likely intended to capture conduct that may not be easily seen as "advertising" or "publicizing" but would have the same effect of publicly communicating the messages prohibited by the laws.   The Court likewise believes courts and juries are capable of determining whether a defendant's conduct publicly communicated messages prohibited by the statute.

The Court finds that Plaintiff would not likely succeed on its vagueness challenge under the Fourteenth Amendment.   Consequently, Plaintiff has not demonstrated that it will likely succeed in demonstrating that the laws it challenges are facially invalid.[7]

---

[7]Even if Plaintiff provided a more persuasive case for determining that the instant statutes and ordinances are facially unconstitutional, such relief may not be available to Plaintiff.   In its motion, Plaintiff requested a preliminary injunction without specifying whether this relief would enjoin all enforcement of the challenged laws or only enforcement actions against Plaintiff.   [*See* ECF No. 9].   At the hearing before the Court, Plaintiff clarified that it sought only to enjoin the

### ii. Free Speech As-Applied Claim

Plaintiff also brings an as-applied challenge under the Free Speech of the First Amendment. An as-applied challenge narrowly questions the legality of a given statute as applied to the party before the court. *See Klobuchar*, 381 F.3d at 790. "If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable." *Id.*

To determine whether Plaintiff's as-applied challenge would be successful, the Court must apply the challenged statutes to the conduct that the laws arguably condemn in violation of Plaintiff's free speech rights, i.e. Plaintiff's intended distribution of its restroom policy.[8] The problem with Plaintiff's as-applied challenge is that there is a significant amount of uncertainty

---

application of the laws to itself but also stated that broader relief may be appropriate within the Court's discretion. Neither the State Defendants nor the City argued that facial invalidation is not available to Plaintiff.

Case law suggests that when a plaintiff's claims and requested relief are limited to the plaintiff's own circumstances, facial invalidation is not an appropriate remedy. In distinguishing between facial and as-applied challenges, courts consider the claims made and the relief sought. *See Iowa Right To Life Comm., Inc. v. Tooker*, 717 F.3d 576, 587 (8th Cir. 2013). "[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). Generally, the breadth of the remedy determines the scope of the claims. *See John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) ("The label is not what matters. The important point is that plaintiffs' claim and the relief that would follow . . . reach beyond the particular circumstances of these plaintiffs. They must therefore satisfy our standards for a facial challenge to the extent of that reach."); *Citizens United*, 558 U.S. at 331 (holding that the distinction between a facial challenge and an as-applied challenge "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint"). The parties fully argued Plaintiff's facial claims and, due to the Court's conclusions regarding the merits of those claims, the Court need not determine whether facial invalidation is available based on the relief Plaintiff seeks. The parties are advised to more fully address these points over the course of the litigation.

[8]For the reasons provided in III.A.1., the Court will not discuss the application of the antidiscrimination laws to the possible delivery of the sermon Plaintiff submitted with its motion. [ECF No. 9-2].

surrounding whether the antidiscrimination laws would ever be applied to its conduct.   This uncertainty favored Plaintiff's claim under standing analysis but may not support its claims under a more searching constitutional analysis.   *See Brownsburg Area Patrons Affecting Change v. Baldwin*, 943 F. Supp. 975, 983 (S.D. Ind. 1996), *aff'd*, No. 96-3981, 1999 WL 33611333 (7th Cir. Sept. 17, 1999) (finding the plaintiff, a political organization, had standing to challenge the constitutionality of state statutes due to a well-founded fear of prosecution but also concluding the plaintiff did not show a reasonable likelihood of success because the challenged statute did not apply to the plaintiff's type of organization).

The burden is on Plaintiff to demonstrate a likelihood of success on the merits of its as-applied Free Speech claim, which includes explaining how the laws apply to it.   Plaintiff pled that it holds many events that are open to the public; however, it stated that all of the events and activities it hosts, even those without "overt religious inculcation," are intended to further its religious objectives. [ECF No. 1 at 3].   "As a result, there are messages, practices, and activities that the Church would not sponsor, host, or otherwise communicate because those messages, practices, and activities would violate the Church's understanding of God's truth."   *Id.*   According to Iowa Code section 216.7(2)(b) and Des Moines City Code section 62-137, the laws do not apply to "[a]ny bona fide religious institution with respect to any qualifications the institution may impose based on religion, sexual orientation, or gender identity when such qualifications are related to a bona fide religious purpose."

The amended and current guidelines drafted and circulated by the ICRC give at least some insight into what it believes are "non-religious activities" that could fall within the scope of the statute and which churches occasionally host.   Such examples are "an *independent* daycare or a polling place."  [ECF No. 9-1 at 21] (emphasis added).   This interpretation of the exemption would

place the emphasis on who exercises control over a given event and for what purpose.  Plaintiff has not pled that it ever allows events of a nonreligious nature that function independent from Plaintiff to be held within its facility.[9]   In fact, in its Complaint Plaintiff repeatedly stated the opposite.  [ECF No. 1 at 3, 8–9].

 Plaintiff is dissimilar to other entities that have been found to be subject to the statute.  *See, e.g.*, *U.S. Jaycees*, 614 F. Supp. at 517 (determining that national leadership training program was public accommodation within meaning of statute as it offered memberships to public indiscriminately); *Amos v. Prom, Inc.*, 117 F. Supp. 615, 630 (N.D. Iowa 1954) (holding that public dance hall was subject to the ICRA as a "place of amusement" under a former wording of the statute); *Ladd v. Iowa W. Racing Ass'n*, 438 N.W.2d 600, 601–02 (Iowa 1989) (noting that race track was unquestionably a public accommodation and holding that "Ladies Day" promotion violated statute); *Brown v. J. H. Bell Co.*, 123 N.W. 231, 233 (1909) (declining to apply a former version of the ICRA to a merchant who gave away free samples of coffee at a booth as part of a food show but noting that "[t]here is no doubt of the validity of the  statute as applied to anything in the nature of an inn, public conveyance, public bathhouse, theater, or other place of amusement").

Moreover, state and federal courts have held that churches and programs they host are *not* places of public accommodation.  *See Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586, 590 (2d Cir. 1988) (affirming on other grounds a grant of summary judgment where

---

[9]At the hearing before the Court, Plaintiff admitted that it serves as a polling location twice a year.  This fact did not appear in its pleadings.  Although Plaintiff argued that acting as a polling location also furthers its religious objectives, the Court believes a very different analysis would apply to such a circumstance.  The application of the ICRA and Des Moines City Code provisions to a polling place held within Plaintiff's facility was not fully argued or briefed, and the Court therefore reserves consideration of this issue for a later date.

district court had determined that church had not violated Connecticut's civil rights act because church was not a public accommodation); *Vargas-Santana v. Boy Scouts of Am.*, Civ. No. 05-2080 (ADC), 2007 WL 995002, at *6 (D.P.R. Mar. 30, 2007) ("[A]s a matter of law, a church is not a place of public accommodation."); *Saillant v. City of Greenwood*, No. IPO1-1760, 2003 WL 24032987, at *7 (S.D. Ind. Apr.17, 2003) (noting that church could exclude persons of its choosing from its property because a "church is not a place of public accommodation"); *Wazeerud-Din v. Goodwill Home & Missions, Inc.*, 737 A.2d 683, 687–88 (N.J. Super. 1999) (holding that a church's addiction program was not a public accommodation under New Jersey law; the group was essentially religious in nature in that it devoted time to the study of Christian tenets and "a religious institution's solicitation of participation in its religious activities is generally limited to persons who are adherents of the faith or at least receptive to its beliefs"); *Roman Catholic Archdiocese of Philadelphia v. Commonwealth of Pennsylvania*, 548 A.2d 328 (Pa. Commw. Ct. 1988) (holding that parochial schools run by the Catholic church are not places of public accommodation under Pennsylvania law).

At the hearing before the Court, both the State Defendants and the City stated that Plaintiff's restroom policy is likely permitted under the antidiscrimination laws because the policy is plainly drafted to serve a religious purpose and that all of the activities Plaintiff enumerated within its Complaint also appeared to be religious in nature.[10]   The Court notes that such acknowledgement does not prevent the State Defendants or the City from seeking enforcement

---

[10]Once again, this is excepting the use of Plaintiff's facility as a polling place.  The State Defendants and the City also stated that the result might be different if Plaintiff allows the use of its facility as commercially available space with no religious limitations placed on such use.  That possibility is likewise not before the Court at this time as Plaintiff did not state—either in its Complaint or at the hearing—that it ever lets out its facility as commercially available space.

against Plaintiff and so assigns these statements little weight.  However, in light of the previous determinations, they seem to be one more indication that the outcome of Plaintiff's claim is far from certain.

On the current facts, Plaintiff has not shown that the challenged laws would ever apply to its conduct.  Hence, Plaintiff's likelihood of success on the merits of its as-applied Free Speech challenge appears dim; there are too many obstacles it must overcome.  Plaintiff may put forward a more compelling case for success on this claim at a later stage of this dispute—at present, it has not done so.  The Court concludes that Plaintiff has not shown the requisite likelihood of success on its as-applied Free Speech claim.

### b.  Religion Clauses claim

Next, the Court must address whether Plaintiff is likely to succeed on its challenge to the constitutionality of the antidiscrimination laws on the basis of its right to freely exercise its religion.  Under the Free Exercise Clause of the First Amendment, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."   The First Amendment is applicable to the states through its incorporation into the Fourteenth Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).  The Free Exercise Clause clearly protects a citizen's right to his or her own religious beliefs.  *Employment Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 877 (1990) ("The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires.").  Under this clause, the "[g]overnment may neither compel affirmation of a repugnant belief nor penalize or discriminate against individuals or groups because they hold religious views abhorrent to the authorities . . . ."  *Sherbert v. Verner*, 374 U.S. 398, 402 (1963) (citations omitted).  However, the Free Exercise Clause does not shield every act that may be infected with religiosity from

government regulation. *See Smith*, 494 U.S. at 878–79 (“We have never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate.”).

To this end, the United States Supreme Court has refused to interpret the Free Exercise Clause “to require exemptions from a generally applicable criminal law.” *Id.* Consequently, “the right of free exercise does not relieve an individual of the obligation to comply with a ‘valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).’” *Id.* at 879 (*quoting United States v. Lee*, 455 U.S. 252, 263, n.3 (1982) (Stevens, J., concurring in judgment)). Neutral and generally applicable laws receive rational basis review. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993) (“[A] law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice.). “Neutrality and general applicability are interrelated, and . . . failure to satisfy one requirement is a likely indication that the other has not been satisfied.” *Id.*

Here, the challenged provisions are neutral on their face, i.e. they do not “infringe upon or restrict practices because of their religious motivation.” *See id.* at 533. The ICRA and the Des Moines City ordinances paralleling its provisions were not passed in order to interfere with religious practices—the clear purpose of the laws is the prevention and elimination of discrimination. Additionally, the inclusion of the religious institution exemption signals the lawmakers’ desire to avoid impinging on religious freedoms.

The Court also concludes that the laws are generally applicable since they do not selectively “impose burdens only on conduct motivated by religious belief.” *See id.* at 543. Other courts have likewise determined that similar state statutes prohibiting discrimination in places of

public accommodation are neutral laws of general applicability.  *See, e.g.*, *Elane Photography, LLC v. Willock*, 309 P.3d 53, 75 (N.M. 2013).  Plaintiff claims that the presence of the religious institution exemption means that the antidiscrimination laws are not generally applicable under *Smith*.  But the presence of exemptions within a statute does not alter a determination of general applicability.  *Olsen v. Mukasey*, 541 F.3d 827, 832 (8th Cir. 2008) ("General applicability does not mean absolute universality.  Exceptions do not negate that the [Controlled Substance Acts] are generally applicable.").  Because the challenged laws are neutral and generally applicable, they do not offend Plaintiff's right to freely exercise its religion.  The Court finds Plaintiff would not likely succeed on the basis of its claim under the Free Exercise Clause.

In its motion, Plaintiff also cites the Establishment Clause.  *See* U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion . . . .").  However, Plaintiff fails to articulate a cogent argument under binding Establishment Clause jurisprudence.  Its arguments regarding the application of the clause in this case come largely from dicta and nonauthoritative sources.  Plaintiff repeatedly states that the Iowa antidiscrimination laws violate a principle of "church autonomy."  *See Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 655 (10th Cir. 2002) (stating that "churches have autonomy in making decisions regarding their own internal affairs").  But the religious institution exemption within the statutes undermines Plaintiff's argument as the exemption is an obvious attempt to *preserve* church autonomy.

Further, Plaintiff's assertions fail to address the manner in which the Establishment Clause has previously been interpreted and applied.  *See, e.g.*, *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971) (establishing a three-pronged Establishment Clause test: "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither

advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion'" (citation omitted) (quoting *Walz v. Tax Commission*, 397 U.S. 664, 668 (1970))).  The traditional aims of the Establishment Clause are not implicated in this case. *See id.* at 612 ("[T]he three main evils against which the Establishment Clause was intended to afford protection [are] 'sponsorship, financial support, and active involvement of the sovereign in religious activity.'").

Plaintiff repeatedly cites *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 132 S. Ct. 694 (2012) to support its contention that antidiscrimination laws should not be applied to religious institutions.  In *Hosanna-Tabor*, the Court recognized an implicit "ministerial exception grounded in the Religion Clauses of the First Amendment" after performing a searching examination of the history of church–government interactions regarding religious employment positions.  *Id.* at 702–04, 707.  The Court held that the ministerial exception barred a former minister's employment discrimination action.  *Id.* at 710.  In this case, however, there is *express* exception written into the antidiscrimination laws at issue preventing their application to religious activities.  *Hosanna-Tabor* is inapposite.

In sum, the Court sees nothing in Establishment Clause jurisprudence that would aid Plaintiff in obtaining injunctive relief.

Accordingly, the Court concludes that Plaintiff is not likely to succeed on the merits of its challenges to the state and municipal antidiscrimination laws under either the Free Exercise Clause or the Establishment Clause.

## 2. Irreparable Harm

The Court next considers whether Plaintiff has shown a threat of irreparable harm.  "To succeed in demonstrating a threat of irreparable harm, 'a party must show that the harm is certain

and great and of such imminence that there is a clear and present need for equitable relief.'" *S.J.W. ex rel. Wilson v. Lee's Summit R–7 Sch. Dist.*, 696 F.3d 771, 778 (8th Cir. 2012) (quoting *Roudachevski v. All–Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011)). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see Phelps-Roper v. Nixon*, 509 F.3d 480, 485 (8th Cir. 2007), *modified on reh'g*, 545 F.3d 685 (8th Cir. 2008) ("If [appellant] can establish a substantial likelihood of success on the merits of her First Amendment claim, she will also have established irreparable harm as the result of the deprivation."). However, because the Court concludes that Plaintiff is not likely to succeed on any of the constitutional grounds it cites in its application for injunctive relief, such relief is unwarranted. *See Powell v. Noble*, 798 F.3d 690, 702 (8th Cir. 2015) ("[A]s we have concluded Powell is unlikely to succeed in showing his First Amendment rights have been violated, we agree with the district court that Powell has not shown a threat of irreparable harm that warrants preliminary injunctive relief."); *Rounds*, 530 F.3d at 738 n.11 ("[W]ithout a showing that it will likely prevail on its [First Amendment] claim . . . [appellant's] asserted threat of irreparable harm is correspondingly weakened in comparison to the State's (and the public's) interest . . . . If the movant cannot show that it is likely to prevail on the merits, there is no reason at the preliminary injunction stage for the courts to disturb a duly elected legislature's attempt to balance these interests.").

Plaintiff has failed to make the threshold showing of a likelihood of success on the merits of its claims supporting its motion for preliminary injunction. Consequently, the Court does not address the remaining factors that dictate whether to grant such an injunction.

## IV.  CONCLUSION

For the reasons stated, Plaintiff's Motion for Preliminary Injunction [ECF No. 9] is **DENIED**.  The State Defendants' Motion to Dismiss [ECF No. 23] is **DENIED**.  The City's Motion to Dismiss [ECF No. 25] is **DENIED**.  Additionally, as stated in footnote 4, the Court grants Plaintiff leave to amend its Verified Complaint [ECF No. 1] by October 28, 2016.

IT IS SO ORDERED.

Dated this 14th day of October, 2016.

STEPHANIE M. ROSE
UNITED STATES DISTRICT JUDGE